## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:07cv11

| | |
|---|---|
| ELENA M. DAVID; ARLEEN J. STACH; and VICTOR M. HERNANDEZ,<br><br>        **Plaintiffs**<br><br>Vs.<br><br>J. STEELE ALPHIN; AMY WOODS BRINKLEY; EDWARD J. BROWN, III; CHARLES J. COOLEY; RICHARD M. DeMARTINI; BARBARA J. DESOER; JAMES H. HANCE; LIAM E. McGEE; EUGENE M. McQUADE; ALVARO G. de MOLINA; MICHAEL E. O'NEILL; OWEN G. SHELL, JR.; R. EUGENE TAYLOR; F. WILLIAM VANDIVER, JR.; BRADFORD H. WARNER; CHARLES W. COKER; STEVEN JONES; KENNETH D. LEWIS; BANK OF AMERICA CORPORATION; BANK OF AMERICA CORPORATION CORPORATE BENEFITS COMMITTEE,<br><br>        **Defendants.** | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the court on defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (#84), defendants' Memorandum in Support (#85), plaintiffs' Memorandum in Opposition (#86), defendants' Reply (#87), defendants' Notice of Supplemental Authority (#88),

plaintiffs' Response to Notice of Supplemental Authority (#89), plaintiffs' Notice of Supplemental Authority (#91), and defendants' [Second] Notice of Supplemental Authority (#92). In addition, the court has before it plaintiffs' Second Amended Complaint (#83), plus in excess of 900 pages of exhibits, submitted in the main by defendants. See Docket Entry #85-1 through 85-24. Counsel for plaintiffs also sent a letters dated July 2, 2008, and July 9, 2008, directly to chambers citing additional authority.[1] The court will direct the Clerk of this court to file the July 2, 2008, and July 9, 2008, correspondence as they amount to matters considered.

Having carefully considered the entire record, including the well reasoned arguments of counsel at the July 11, 2008, hearing, the undersigned respectfully enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

## I.    Background

Plaintiffs are participants in the Bank of America 401(k) Plan (the "401(k)

---

[1]     While counsel are to be commended for bringing additional authority to the attention of the court, the proper method - - and only method - - for communicating additional authority to the court is through an ECF filing of additional authority. L.Cv.R. 5.2.1(B). By corresponding directly with chambers, no record is made of such correspondence, and staff as well as the public are left out of the loop. Further, by sending such materials through the mails, counsel has actually selected the slowest method for the court to receive such materials, inasmuch as filing via ECF provides the court with immediate access to the materials.

Plan") and the Bank of America Pension Plan (the "Pension Plan") (collectively the "Plans"), and sue on behalf of the Plans. The defendants are Bank of America Corporation, a bank holding company (the "Bank"), the Bank of America Corporation Corporate Benefits Committee ("CBC"), and the individual members of the CBC ("Individual Defendants").

The 401(k) Plan provides plan participants the option to invest in both Bank affiliated and non-affiliated mutual funds. The assets of the Pension Plan are invested in several hundred different investments through various investment managers, and benefits are credited to participants according to certain pre-established crediting criteria, rather than actual investment performance. Plaintiffs claim that the defendants breached their fiduciary duties to the Plans under ERISA by selecting Bank affiliated mutual funds as investment options for the Plans.

Defendants have made two distinct motions to dismiss. First, defendants move to dismiss all claims involving the Pension Plan, arguing that plaintiffs lack Article III standing to pursue any claims with respect to the Pension Plan. Second, defendants seek dismissal as to all claims asserted against the CBC, which is a "committee," arguing that a committee is not a proper defendant under ERISA.

## II.    The 401(k) Plan

For the limited purpose of the pending motion, it appears undisputed that the

401(k) Plan is a "defined contribution plan" within the meaning of ERISA, Compl., at ¶ 22,[2] that the CBC is plan administrator of the 401(k) Plan, and that the assets of the 401(k) Plan are invested in various investment options according to the investment elections of individual participants. It is also uncontested that prior to 2003, the mutual funds available under the 401(k) Plan were all advised by Bank of America affiliates, Compl., at ¶ 27, but were expanded to include several non-affiliated mutual funds, and that as January 1, 2006, the 401(k) Plan offered seventeen mutual funds--including seven non-affiliated mutual funds--as investment options.

## III.    The Pension Plan

The Bank also sponsors a Pension Plan, which is a "defined benefit plan" within the meaning of ERISA.[3]   The CBC is also the plan administrator of the Pension Plan, with sole responsibility for the Pension Plan's operation and administration. Contributions to the Pension Plan are made solely by Bank of

---

[2]      The Second Amended Complaint, at paragraph 23, alleges that the Bank is the 401(k) Plan administrator.  This appears to be an error as to a conclusion of law inasmuch as the Plan language itself identifies the CBC as the 401(k) Plan Administrator, which is in turn in conformity with the requirements of ERISA as to naming the Plan administrator..

[3]      The court inquired of counsel for defendants whether the provision contained in the 401(k) Plan, which allowed participants to transfer 401(k) funds to the Pension Plan, would have any impact upon the status of the Pension Plan as a "defined benefit plan."  Counsel explained that it would only increase "the promise" to that employee.  Counsel for plaintiffs concurred in such explanation.

America and its subsidiaries and not by participants. See Pension Plan §§ 2.1(38), 4.1, 4.2. Despite plaintiffs' allegation that the Bank is the Plan Administrator, the CBC appears to be the Plan Administrator of the Pension Plan for the same reasons as those discussed above in relation to the 401(k) Plan.

Under the Pension Plan, a participant's benefits - - which defendants described in arguments as a "promise" - -  are based on a combination of (1) "Compensation Credits," a percentage of the participant's compensation that increases with the participant's age and length of service with the Bank; and (2) "Investment Credits," the hypothetical investment return that would be realized if the participant's Compensation Credits were invested in certain "Investment Measures." See Pension Plan §§ 5.2, 5.3, 5.4.

While the Investment Measures mimic the investment options available under the 401(k) Plan, SPD, at 48-49, the Pension Plan's actual investments - -and thus the investment fees directly or indirectly paid by the Pension Plan - -generally do not track the Investment Measures selected by participants. Pension Plan § 5.4. The Pension Plan's assets are invested in several hundred different investments through various investment managers. Regardless of the actual performance of the Investment Measures selected by a participant, the participant is entitled, at a minimum, to the full value of the participant's Compensation Credits.  A defined benefit plan with this

type of structure is commonly known as a "cash balance plan," which the Department of Labor describes as follows:

> In a typical cash balance plan, a participant's account is credited each year with a pay credit (such as 5 percent of compensation from his or her employer) and an interest credit (either a fixed rate of a variable rate that is linked to an index such as the one-year Treasury bill rate). Increases and decreases in the value of the plan's investments do not directly affect the benefit amounts promised to participants. Thus, the investment risks and rewards on plan assets are borne solely by the employer.

U.S.D.O.L., E.B.S.A., "Frequently Asked Questions about Cash Balance Pension Plans.[4] As a matter of law, if the aggregate performance of participant's chosen Investment Measures generate a negative return, plan participants remain entitled to the full value of their Compensation Credits.[5]

## IV.   Claims Asserted in the Second Amended Complaint

In their two count Second Amended Complaint, plaintiffs allege that defendants breached their fiduciary duties to the Plans by causing "the Plans to invest Plan assets in investment funds offered or managed by [Bank of America]

---

[4]     http://www.dol.gov/ebsa/FAQs/faq_consumer_cashbalanceplans.html

[5]     Defendants argued at the hearing that the Pension Plan was overfunded by some 1.7 billion dollars when the initial Complaint was filed and defendants argued that such plan lost billions at the beginning of this decade. The court has accepted both arguments as true inasmuch as it is conceivable that a plan can lose billions and still be overfunded.

Subsidiaries and Affiliates . . . ." Compl. ¶ 10. Plaintiffs contend that Defendants are liable for all losses incurred "by the Plans" as a result of such alleged violations as well as for all profits earned by defendants on fees paid "by the Plans" to the Bank and its affiliates. Compl. ¶¶ 79, 84. Plaintiffs have asserted the following claims for relief:

    (1)    **Count I of the Second Amended Complaint**: plaintiffs allege that such investments constituted prohibited transactions under ERISA § 406;

    (2)    **Count II of the Second Amended Complaint**: plaintiffs allege that in "authorizing and causing" such investments, the defendants breached fiduciary duties of prudence and loyalty in violation of ERISA § 404, 29 U.S.C. § 1104.

## V.    The Motion to Dismiss

Defendants move to dismiss all claims asserted against or on behalf of the Pension Plan for lack of standing and to dismiss the CBC as it is not a "person" capable of being sued under ERISA. Specifically, defendants assert that:

    (1)    plaintiffs lack standing under Article III to sue on behalf of the Pension Plan because plaintiffs have not suffered any injuries with respect to the Pension Plan that are likely to be redressed by this litigation, and any such claims against the Pension Plan are, therefore, subject to dismissal; and

(2)     the CBC is not an entity subject to suit under ERISA.

Defendants move under Rules 12(b)(1) and 12(b)(6), Federal Rules of Civil Procedure.

## VI.     Applicable Standards

### A.     Rule 12(b)(1) Standard

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit or claim.  Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court.  <u>Mansfield, C. & L.M.R. Co. v. Swan</u>, 111 U.S. 379, 382 (1884).  The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment.  <u>Capron v. Van Noorden</u>, 2 Cranch 126, 127, 2 L.Ed. 229 (1804).   The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed.R.Civ.P. 12(h)(3).

When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff.  <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982).  In <u>Richmond,</u>

<u>Fredricksburg & Potomac R.R. Co. V. United States</u>, 945 F.2d 765 (4th Cir. 1991)

(Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. <u>Id.</u>; <u>Trentacosta v. Frontier Pacific Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. <u>Trentacosta</u>, <u>supra</u>, 813 F.2d at 1559 (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. <u>Trentacosta</u>, <u>supra</u>, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. <u>Revene v. Charles County Comm'rs</u>, 882 F.2d 870, 872 (4th Cir.1989); <u>Shultz v. Dept. of the Army</u>, 886 F.2d 1157, 1159 (9th Cir.1989).

<u>Id.</u>, at 768-69. Where jurisdictional facts are intertwined with facts central to the

substance of a case, a court must find that jurisdiction exists and consider and resolve

the jurisdictional objection as a direct attack on the merits of the case. <u>United States</u>

<u>v. North Carolina</u>, 180 F.3d 574, 580 (4th Cir. 1999).

### B.    Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable

claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. <u>Neitzke</u>

v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' Second Amended Complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001). However, the Court recently held that the "no set of facts" standard first espoused in Conley, supra, only describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum adequate pleading to govern a complaint's survival." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955 (2007). Under Twombley, to survive Rule 12(b)(6) scrutiny, the claims must at a minimum be "plausible." Id.

While the court accepts plausible factual allegations in the Second Amended

Complaint as true and considers those facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiffs in the Second Amended Complaint and will view them in a light most favorable to plaintiffs.

## VII.  Discussion

### A.  Motion to Dismiss Claims Asserted Against or on Behalf of the Pension Plan

Plaintiffs who assert claims under ERISA not only must satisfy the statutory standing requirements of ERISA § 502(a), they also must establish standing under

Article III of the United States Constitution. Plaintiffs' argument that the "common law" cannot trump standing provided by Congress in ERISA is unavailing inasmuch as Article III or "constitutional standing" is a threshold issue in every case. Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765 (2000); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998); Bennett v. Spear, 520 U.S. 154 (1997); Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). The Supreme Court has been clear on the point:

> Article III of the Constitution limits the power of federal courts to deciding "cases" and "controversies." This requirement ensures the presence of the "concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements. This Court consistently has required, in addition, that the party seeking judicial resolution of a dispute "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the other party. *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979); *see also Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).
> The nature of the injury is central to the Art. III inquiry, because standing also reflects a due regard for the autonomy of those most likely to be affected by a judicial decision. "The exercise of judicial power ... can so profoundly affect the lives, liberty, and property of those to whom it extends," *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 473, 102 S.Ct. 752, 759, 70 L.Ed.2d 700 (1982), that the decision to seek review must be placed "in the hands of those who have a direct stake in the outcome." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S.Ct. 1361,

> 1369, 31 L.Ed.2d 636 (1972). It is not to be placed in the hands of "concerned bystanders," who will use it simply as a "vehicle for the vindication of value interests." *United States v. SCRAP*, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973).

Diamond v. Charles, 476 U.S. 54, 61-62 (1986).  See Wilmington Shipping Co. v. New Eng. Life Ins. Co., 496 F.3d 326 (4th Cir. 2007).

Under prevailing case law, plaintiffs must plead and prove that they have suffered an injury that will "likely" be redressed by a favorable outcome in the litigation. Lujan, supra, at 560-62. Plaintiffs cannot satisfy that threshold requirement as to their claims against the Pension Plan.  In Glanton v. AdvancePCS, Inc., 465 F.3d 1123, 1124 (9th Cir. 2006), the Court of Appeals for the Ninth Circuit held that plan participants lacked standing to pursue claims under ERISA § 502(a)(2) where the relief sought on behalf of the plan would not benefit the participants individually.  Id., at 1125. In Glanton, the plaintiffs alleged that a pharmacy benefits management company breached fiduciary duties to certain welfare benefit plans by overcharging the plans for prescription drugs.  Id. Explaining that a reduction in the prices charged to the plan for prescriptions would not require the plans to pass those savings on to participants in the form of greater benefits or lower costs, the Ninth Circuit held that participants could not establish redressability and thus lacked constitutional standing to pursue claims under ERISA. Id.

In this case, plaintiffs neither allege that they have been denied benefits, nor that their receipt of future benefits - - the promise - - is in jeopardy. Looking at the language of the Second Amended Complaint, plaintiffs instead allege that the Pension Plan incurred losses as the result of paying purportedly excessive or improper fees. Compl., at ¶ 83. Such an allegation is analogous to the allegation in <u>Glanton</u> that such plan was being overcharged for prescription drugs. Plaintiffs do not allege how such allegedly improper or excessive payments have had any effect on their Pension Plan benefits or that any recovery by the Pension Plan in this action would result in greater benefits.

As discussed above, it is undisputed that the Pension Plan at issue here is a "defined benefit plan." Compl., at ¶ 28.) As the Supreme Court explained:

> Such a plan, as its name implies, is one where the employee, upon retirement, is entitled to a fixed periodic payment. . . . [T]he employer typically bears the entire investment risk and -- short of the consequences of plan termination -- must cover any underfunding as the result of a shortfall that may occur from the plan's investments. . . . The structure of a defined benefit plan reflects the risk borne by the employer. Given the employer's obligation to make up any shortfall, no plan member has a claim to any particular asset that composes a part of the plan's general asset pool. Instead, members have a right to a certain defined level of benefits, known as "accrued benefits." . . . Given this accumulated contribution floor, plan members generally have a nonforfeitable right only to their "accrued benefit," so that a plan's actual investment experience does not affect their statutory entitlement.

<u>Hughes Aircraft Co. v. Jacobson</u>, 525 U.S. 432, 439-40 (1999) (citations and

quotation omitted). Under the clear language of <u>Hughes</u>, the sum total entitlement of any plaintiff is the full value of the accrued benefits as determined under the Pension Plan's terms - - and nothing more - - regardless of the performance of the Pension Plan's investments or the Pension Plan's payment of any investment related fees.

The Court of Appeals for the Fourth Circuit has also recently addressed Article III standing and ERISA. The appellate court held, as follows:

> This traditional argument based on *Russell*, however, rests on ERISA jurisprudence governing defined benefit plans, in which the plan was paramount and once a participant was paid the defined benefit, only the plan or those with current plan accounts had an interest in recovering losses caused by fraud or other misconduct. As the Supreme Court pointed out in *LaRue*, the early ERISA cases, including *Russell*, were decided as they were because the plaintiffs in those cases were participants in defined benefit plans so that when the plan was injured, it did not necessarily affect a participant's defined benefit. Once the plaintiff received the defined benefit, he could receive no more. As *the LaRue* Court explained, "A 'defined benefit plan' ... generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation," *LaRue*, 128 S.Ct. at 1022 n. 1, and a plaintiff who received a defined benefit could receive no more even if the plan had been defrauded, id. at 1024-25. The *LaRue* Court pointed out, however, that since Russell, things have changed, and today " [d]efined contribution plans dominate the retirement plan scene." Id. at 1025 (emphasis added). "[A] 'defined contribution plan' or 'individual account plan' promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." *LaRue*, 128 S.Ct. at 1022 n. 1 (emphasis added). As a consequence, any fraud that diminishes the value of a participant's individual account is a harm for which the participant may sue under §§ 502(a)(2) and 409(a) of ERISA. *Id.* at 1025. As the

Supreme Court articulated its holding:

> [A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.

> *Id.* at 1026 (emphasis added). Thus, the defendants' argument that only the entire plan has an interest in the recovery is defeated by the *LaRue* Court's observation that "our references to the 'entire plan' in *Russell*, which accurately reflect the operation of § 409 in the defined benefit context, are beside the point in the defined contribution context." *Id.* at 1025 (emphasis added).

In re Mutual Funds Investment Litigation, 529 F.3d 207, 217-218 (4th Cir. 2008).

Plaintiffs, therefore, lack standing under Article III of the United States Constitution because they cannot and have not, as is their burden in responding to defendants' Motion to Dismiss, been able to "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the defendants. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99 (1979). Because the Pension Plan is a defined benefit plan, the only possible circumstance in which plaintiffs could be ever be entitled to greater benefits would be if the Bank a, as plan sponsor, were to amend the Pension Plan to provide additional benefits. Thus, even if plaintiffs were to prevail on their claims against the Pension Plan, they would receive absolutely no benefit. Because Plaintiffs have not suffered any injury that is

likely to be redressed by a favorable outcome in this litigation, they lack Article III or constitutional standing to assert claims as to the Pension Plan. The undersigned will, respectfully, recommend that plaintiffs claims with respect to the Pension Plan be dismissed.

### B. Motion to Dismiss Claims Asserted Against the CBC

Defendants have moved to dismiss plaintiffs' claims asserted against defendant Corporate Benefits Committee. Defendants do not, however, contest that the individual members of the committee are properly before the court. Instead, it is defendants' contention that the CBC is not a "person" subject to liability under ERISA because "committees" are not among the persons listed in ERISA as capable of being sued.

Turning first to the statute, ERISA Section 409 imposes liability on "[a]ny person who is a fiduciary with respect to a plan" who breaches his fiduciary duty. ERISA § 409(a), 29 U.S.C. § 1109(a). The statute defines "person" within the meaning of Section 409 to include: "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." ERISA § 3(9), 29 U.S.C. § 1002(9). Clearly, the individual members of the CBC are plan fiduciaries. "Committees" are conspicuously absent from the list.

Next, the court has considered opinions of other courts on whether a committee is a person under ERISA capable of being sued. The United States District Court for the Middle District of North Carolina held, as follows:

> The language of Section 3(9) clearly and unambiguously sets out eleven categories of "persons" subject to personal liability in a breach of fiduciary duty action under ERISA. Given the comprehensive nature of ERISA, the omission of "committee" from that definition cannot be considered simply a drafting oversight. Committees are, therefore, not properly subject to ERISA breach of fiduciary duty claims. *Cf. Boucher v. Williams*, 13 F.Supp.2d 84, 93 (D.Me.1998) (holding that a plan "is not a 'person' as that term is defined by ERISA and is therefore not subject to claims of breach of fiduciary duty."); *Swanson v. U.A. Local 13 Pension Plan*, 779 F.Supp. 690, 702 (W.D.N.Y.1991) (holding "that a pension plan is not a proper defendant" because it is not included in the statutory definition of "person"); *Adams v. Koppers Co.*, 684 F.Supp. 399 (W.D.Pa.1988) (holding that a plan is an improper defendant because "[t]he language of the statute lists a large variety of defendants and does not list plans").
>
> This interpretation is consistent with the legal status of committees, which "[are] not, by [themselves], legal entit[ies] having the capacity to sue or be sued." *In re RCN Litig.*, No. 04-5068(SPC), 2006 WL 753149, at *5 (D.N.J. Mar. 21, 2006); *cf. Doe v. Bayer Corp.*, 344 F.Supp.2d 466, 468-69 (M.D.N.C.2004) ("North Carolina does not confer capacity to sue or be sued on unincorporated parts of corporations") (*citing Nelson v. Atl. Coast Line R.R. Co. Relief Dep't*, 147 N.C. 103, 60 S.E. 724 (1908)).

Tatum v. R.J. Reynolds Tobacco Co., 2007 WL 1612580, 8 (M.D.N.C. 2007) (M.D.N.C. 2007). The exclusion of committees from the list of persons capable of suit under ERISA comports with North Carolina law, which does not allow suit against unincorporated parts of a corporation, such as committees. Doe v. Bayer

Corp., 344 F.Supp.2d 466, 468-69 (M.D.N.C.2004).

While the decision of the Middle District of North Carolina is only persuasive authority in the Western District, the reasoning is highly persuasive to the undersigned as it comports not only with the clear language of ERISA, but common sense. Clearly, committees are not legal entities capable of suing or being sued, and are not set up in such a manner as to make them capable of speaking with one voice, such as performing such tasks as answering interrogatories or capable of attending a Rule 30(b)(6) deposition.

Finding that, as a matter of law, committees are not properly subject to ERISA breach of fiduciary duty claims, the undersigned will respectfully recommend that defendants' Motion to Dismiss all claims asserted against the CBC be granted and that the CBC be dismissed from this lawsuit.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (#84) be **ALLOWED**, and

(1)     that all claims asserted against or on behalf of the Pension Plan be **DISMISSED** with prejudice; and

(2)    that all claims asserted against defendant Bank of America Corporate Benefits Committee be **DISMISSED** with prejudice, and that such defendant be **DISMISSED** from this action.

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **ten (10)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: July 22, 2008

Dennis L. Howell
United States Magistrate Judge