UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07 CV 00011

ELENA M. DAVID, et al.,       )
                              )
            Plaintiffs,       )
                              )
    v.                        )
                              )
J. STEELE ALPHIN, et al.,     )
                              )
            Defendants.       )
                              )

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY AS TO ISSUES OF MARKET TIMING**

Defendants Bank of America Corporation ("Bank of America" or the "Bank"), J. Steele Alphin, Amy Woods Brinkley, Edward J. Brown, III, Charles J. Cooley, Richard M. DeMartini, Barbara J. Desoer, James H. Hance, Jr., Kenneth D. Lewis, Liam E. McGee, Eugene M. McQuade, Alvaro G. De Molina, Michael E. O'Neill, Owen G. Shell, Jr., R. Eugene Taylor, F. William Vandiver, Jr., and Bradford H. Warner ("Defendants") respectfully submit this memorandum in support of their motion to stay discovery as to allegations of market timing and state as follows:

## I. INTRODUCTION

Defendants seek a partial and narrow stay of discovery because two paragraphs of allegations concerning mutual fund market timing — added in the most recent version of Plaintiffs' complaint — overlap with the Market Timing Multidistrict Litigation pending in the United States District Court for the District of Maryland. *In re Mutual Funds Investment Litigation*, MDL No. 1586 (D. Md.). The Market Timing MDL consists in part of dozens of lawsuits that allege market timing in mutual funds advised by Bank of America affiliates, including a case against the fiduciaries of the Bank of America 401(k) Plan (the "Plan") brought under ERISA. The Judicial Panel on Multidistrict Litigation ("JPML") expressly held that creation of the MDL-1586 was necessary "to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *See* Order of Judicial Panel on Multidistrict Litigation regarding Docket Nos. 1576, 1577, 1582, 1585, 1586, 1590 & 1591, entered February 20, 2004, attached to the Declaration Of Shannon M. Barrett In Support Of Defendants' Motion To Stay Discovery As To Allegations Of Market Timing Involving Bank Of America And Its Affiliated Mutual Funds (the "Barrett Decl.") as Exhibit 1 ("Consolidation Order") at 3.

2

Moreover, after years of litigation, the relevant parties in the Market Timing MDL have entered into a comprehensive settlement of the securities and ERISA actions involving Bank of America-affiliated funds relating to market timing, including any such claims that may be asserted in this action. The parties expect that those settlements will be submitted to the MDL Court for preliminary approval this summer.

Notwithstanding the language in the Consolidation Order and the pending settlement in the Market Timing MDL, plaintiffs in this case now seek to move forward here with discovery into market timing issues. Since the Market Timing MDL is already overseeing litigation of market timing claims, including a case against the fiduciaries of the Bank of America 401(k) Plan (the "Plan") brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), discovery relating to mutual fund market timing should be stayed in this case.

## II. FACTUAL BACKGROUND

### A. Market Timing Litigation.

On September 3, 2003 the New York Attorney General ("NYAG") commenced an enforcement action against Canary Capital Partners LLC ("Canary"), a New Jersey hedge fund, alleging that Canary had engaged in schemes involving market timing and related activities in various mutual funds, including the Nations Funds (the "Funds"), a family of proprietary mutual funds advised by Bank of America affiliates.[1] On February 9, 2005, after an investigation by the

---

[1] In April 2004, Bank of America merged with FleetBoston Financial Corp. ("Fleet"), which operated a family of mutual funds known as the Columbia Funds. Prior to the merger, the Columbia Funds were themselves the subject of a regulatory settlement involving the SEC and the NYAG's office concerning market timing allegations. In June 2004, the Nations Funds were renamed as Columbia Funds and, shortly thereafter, the Plan became an investor in the Columbia Funds. However, the Plan was not an investor in the Columbia Funds until after the regulatory settlement and so did not hold shares in the Columbia Funds during the period in which market timing was alleged to have occurred.

NYAG and the SEC, Bank of America reached a settlement with the regulators resolving the market timing claims.  *See In the Matter of Banc of America Capital Management, LLC*, ("*In re Banc of America*") Order Instituting Administrative & Cease-and-Desist Proceedings, Administrative Proceedings File No. 3-11818, Exchange Act Release No. 33-8538 (Feb. 9, 2005) ("SEC Release No. 33-8538"), *available at* http://sec.gov/litigation/admin/33-8538.htm.

As part of the regulatory settlement, Bank of America respondents paid $375 million, which amount was to be distributed by an Independent Distribution Consultant ("IDC") according to a plan of allocation to be approved by the SEC. *Id.* The regulatory settlement has provided Nations Funds shareholders with more than full compensation. In apportioning the distribution, the IDC directed that approximately $89.7 million be paid to the affected Nations Funds shareholders, an amount that was approximately *$70 million* more than the dilution and other impacts caused by the alleged market timing (as calculated by the IDC). *See In re Banc of America*, Notice of Proposed Distribution Plan and Opportunity For Comment, Administrative Proceedings File No. 3-11818, Exchange Act Release No. 34-56077 (July 16, 2007), *available at* http://sec.gov/litigation/admin/34-56077.htm. The IDC's distribution plan was approved by the SEC on December 27, 2007, and the distribution to the Funds' shareholders pursuant to that plan is in process. *See In re Banc of America*, Order Approving the Distribution Plan, Administrative Proceedings File No. 3-11818, Exchange Act Release No. 34-57048 (Dec. 27, 2007), *available at* http://sec.gov/litigation/admin/34-57048.pdf.

### B. Creation of Market Timing MDL.

In the months following the announcement of the NYAG's enforcement action, but before Bank of America settled the regulators' actions, mutual fund investors commenced hundreds of shareholder class action and derivative lawsuits relating to alleged market timing

against dozens of entities, including Bank of America and numerous other mutual fund advisers. Parties to these cases moved to consolidate them in an MDL that would handle the market timing litigation in a uniform and consistent fashion. On February 20, 2004, the MDL Panel issued an order transferring the market timing actions to the United States District Court for the District of Maryland, and centralizing the actions onto a single MDL docket, MDL-1586. *See* Consolidation Order. In its order, the JPML explained that centralization of the actions on a single MDL docket would "serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation." *Id.* at 3. The Panel added that "congregating these market timing/late trading actions [ ] is necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *Id.* The Market Timing MDL contains 17 sub-tracks, each relating to a different mutual fund family.

The Bank of America sub-track includes various securities class actions as well as an ERISA class action, *McKoy v. Bank of America Corporation, et al.*, No. 1:04-cv-00867 (D. Md. filed Apr. 6, 2004) ("McKoy"), filed by participants in the Plan against the Bank and other alleged Plan participants. *See In Re Mutual Funds Investment Litigation*, MDL No. 1586. As in the current action, the *McKoy* complaint alleges that the Bank and certain individual defendants breached ERISA fiduciary duties under and engaged in prohibited transactions by causing the Plan to invest in the Funds when it was imprudent or otherwise inappropriate to do so.[2]

---

2     The operative complaint in *McKoy*, No. 1:04-CV-867, [Dkt. No. 3] is attached to the Barrett Decl. as Exhibit 2.

5

*Compare* McKoy Complaint ¶¶ 90–96 *with* Second Amended Class Action Complaint [Dkt. No. 83] ("SAC") ¶¶ 75–84. [3]

### C. Proposed Settlement of Market Timing MDL.

On December 15, 2005, the parties in the Market Timing MDL entered into a comprehensive settlement of the securities and ERISA actions involving the Funds and a copy of the settlement stipulation was submitted to the Market Timing MDL court. Due to the costs and complexities of providing notice to the settlement classes, as well as the presence of so-called "cross-track" broker and trader defendants who are named in multiple sub-tracks, the settlements in the Market Timing MDL have not yet been presented for court approval. Recently, however, a sufficient number of settlements were reached, allowing the court and the parties to move forward with the formal approval process. As such, the Market Timing MDL court has set deadlines for the execution of settlement agreements in the various sub-tracks in which settlements have been or appear likely to be reached, with the goal of submitting all preliminary approval papers in summer 2009. If the Funds settlement is approved by the court, all claims relating to or arising out of market timing in the Funds—including all potential ERISA claims— will be resolved.

### D. Market Timing Allegations in the Present Action.

Market timing allegations were not part of Plaintiffs' original or first amended complaints in this action, which centered on allegations that the Bank and its Corporate Benefits Committee breached ERISA fiduciary duties to Bank of America 401(k) Plan (the "Plan") and its participants by causing the Plan to incur unreasonable expenses, principally through the decision

---

[3] On June 11, 2009, Plaintiffs filed a motion to intervene in the *McKoy* litigation. *See* Elena M. David, Arlene J. Stach, And Victor M. Hernandez's Motion to Intervene Pursuant To Fed. R. Civ. P. 24, *In Re Mutual Funds Investment Litigation*, MDL No. 1586 [Dkt. No. 1212].

6

to offer Bank-affiliated mutual funds (the "Funds") as plan investment options. *See* Complaint, [Dkt. No. 1] (filed Aug. 7, 2006); and First Amended Complaint, [Dkt. No. 6] (filed Oct. 16, 2006). Rather, Plaintiffs first introduced market timing allegations through their Second Amended Complaint, filed on July 31, 2007. In that version of their Complaint, Plaintiffs included two new paragraphs alleging that Defendants had caused the Plan to invest in the Funds when they knew that market timing was taking place, and that as a result, the Plan had invested in the Funds on less favorable conditions than Canary. *See* SAC ¶¶ 56-57. No other part of Plaintiffs' complaint was altered to reflect the addition of those allegations.

On March 5, 2009, Plaintiffs served Defendants their First Request for Production of Documents. Among the 36 numbered requests[4] in that document was a request for:

> All Documents that relate to the allegations of market timing, and the activities that are the basis of those allegations, discussed in paragraphs 56 and 57 of the SAC, including, without limitation, all documents relating to defendant Alvaro de Molina's involvement in the challenged activities.

*See* Request No. 25, Plaintiffs' First Request for Production of Documents to All Defendants at 11, attached to the Barrett Decl. as Exhibit 3. Defendants timely served their objections and responses to Plaintiffs' requests, and subject to those objections, have begun the process of collecting and reviewing responsive documents that are relevant to the parties' claims and defenses. As part of their response, Defendants objected to Plaintiffs' request concerning market timing allegations as overly broad and unduly burdensome and notified Plaintiffs of their intent to file the instant Motion. Defendants' Objections to Plaintiffs' First Request for Production of Documents, at 24–25, attached to the Barrett Decl. as Exhibit 4. In addition, pursuant to JPML

---

[4] Plaintiffs' request for production of documents served on March 5, 2009 included two requests numbered "32," which were referred to as 32 and 32[A], respectively, in Defendants' responses and objections to the requests. Thus, although the final request is numbered 35, there are 36 total requests.

Rule of Procedure 7.5(e), Bank of America has notified the JPML of the existence of this action. *See* Letter to Hon. Jeffrey N. Lüthi, dated June 15, 2009, attached to the Barrett Decl. as Exhibit 5.[5]

## III. Argument

### A. The Court Should Stay Discovery as to Market Timing Pending Resolution of the Market Timing MDL Settlement.

As the Fourth Circuit has stated, there is "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)), *see also Blinder, Robinson & Co., Inc. v. SEC*, 692 F.2d 102, 106 (10th Cir. 1982) ("a court may, in its discretion, defer or abate proceedings where another suit, involving the identical issues, is pending either in federal or state court, and it would be duplicative, uneconomical and vexatious to proceed."). A stay of discovery as to market timing pending the outcome of the Market Timing MDL settlement is an appropriate exercise of the Court's power.

As an initial matter, even ignoring the pending settlement, a stay of discovery into market timing issues would be warranted given the stated purposes of the Market Timing MDL. The JPML clearly explained in its Consolidation Order that the Market Timing MDL was intended "to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." Consolidation Order at 3.

---

[5] Defendants have moved this Court for a stay of discovery with respect to the market timing allegations rather than seeking transfer of the case to the Market Timing MDL at this time (but without prejudice to Bank of America's right to move the JPML to transfer this case to the Market Timing MDL at some point). Defendants believe that moving for a stay here would be a more efficient way of dealing with the overlap that Plaintiffs have injected, given that the core claims and issues in this case are entirely unrelated to market timing, that this case is

This intent would obviously be undermined if Plaintiffs here were allowed to engage in wholly separate discovery process in a separate court into the very topic that is the sole focus of the Market Timing MDL. As written, Plaintiffs' single request would impose a tremendous burden on Defendants, requiring the Bank to cull vast amounts of documents from departments and affiliates of the Bank that have no involvement in the ERISA fiduciary functions challenged in this case. This is particularly so given that the Market Timing MDL already contains an earlier-filed ERISA action, *McKoy*, which asserts claims virtually identical to those Plaintiffs have sought to add through their Second Amended Complaint. In both this action and *McKoy*, the plaintiffs purport to sue the Bank and other alleged fiduciaries on behalf of participants in the Plan for alleged losses to the Plan resulting from the defendants' decisions to include the Funds as Plan investment options when they knew or should have known that it was improper to do so. *Compare McKoy* Complaint ¶¶ 47–56, 74–76, 82 *with* SAC ¶¶ 1, 11, 56. Indeed, to the extent Plaintiffs' claims are based on alleged market timing in the Funds, those claims are indistinguishable from the claims asserted in *McKoy*. This alone provides sufficient reason to stay proceedings in the current case to the extent that they relate to market timing—even absent the existence of the Market Timing MDL settlement. *See Int'l Nickel Co. v. Martin Barry, Inc.*, 204 F.2d 583, 586 (4th Cir. 1953) (affirming stay of litigation in favor of earlier-filed suit on grounds that "the plaintiff was not entitled as a matter of right to have two federal courts trying the same issue at the same time when court dockets are crowded and other litigants have right to a hearing.").

---

still in the discovery stage, and that the Market Timing MDL court is now handling a complex, multi-track settlement process.

The existence of the Market Timing MDL settlement makes the importance of a stay all the more acute. The settlement raises the real prospect—indeed likelihood—that discovery into market timing will in the very near future prove to be a complete waste of resources. If approved, the settlement will release the Bank of America defendants from any and all claims by the Plan and its participants relating to market timing involving the Funds. Thus, anything Plaintiffs learn regarding alleged market timing would be inconsequential to their claims. Simply put, it makes no sense to require Defendants to begin incurring the burden and expense of collecting and producing documents relevant to theories that Plaintiffs will, in all likelihood, be foreclosed from asserting within a few short months.

Against this backdrop, the relief that Defendants seek through their current Motion is modest. Defendants do not seek a stay of *all* discovery but instead seek a stay solely as to the issue that overlaps completely with the Market Timing MDL. As noted above, such a stay would not affect the bulk of Plaintiffs' discovery requests nor would it implicate any of the theories that were the basis of Plaintiffs' original claims. Indeed, in seeking to intervene in the *McKoy* action, Plaintiffs here have represented "that the complaint in the [*David action*] does not assert claims based upon late trading or market timing in the [Funds] . . . . Brief in Support of Elena M. David, Arlene J. Stach, And Victor M. Hernandez's Motion to Intervene Pursuant To Fed. R. Civ. P. 24, *In Re Mutual Funds Investment Litigation*, MDL No. 1586, at 3 [Dkt. No. 1212], attached to the Barrett Decl. as Exhibit 6.[6] Further, Defendants do not at this time request a permanent bar on discovery into the market timing issue. Rather, Defendants seek only a

---

[6]  It is also worth noting that, as the result of the governmental enforcement actions and settlement described above, a significant amount of material regarding the allegations of market timing already exists in the public domain, including a lengthy administrative order issued by the SEC detailing the Commission's findings surrounding the Bank of America affiliates' involvement in the matter. *See In re Banc of America*, SEC Release No.

10

temporary stay until the Market Timing MDL court has had an opportunity to rule on the pending settlement. At that time, this Court will be well-positioned to determine whether discovery into market timing allegations can serve a legitimate purpose in this litigation.

Accordingly, Defendants respectfully request that, in the interest of judicial economy, the Court stay discovery into alleged market timing involving the Funds pending the final resolution of the settlement previously submitted to the Market Timing MDL court.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay discovery on the issue of market timing pending the resolution of the Market Timing MDL in the District of Maryland.

---

33-8538. Thus, a brief stay of formal discovery on the issue of market-timing would not even prevent plaintiffs from immediately accessing a substantial amount of information on that topic.

Dated: June 16, 2009						Respectfully submitted,

 /s/ Shannon M. Barrett
SHANNON M. BARRETT (*Pro Hac Vice*)
sbarrett@omm.com
ROBERT N. ECCLES (*Pro Hac Vice*)
beccles@omm.com
GARY S. TELL (*Pro Hac Vice*)
gtell@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006-4001
Telephone:  (202) 383-5300
Facsimile:   (202) 383-5414

IRVING M. BRENNER
**MCGUIREWOODS LLP**
201 North Tryon Street
Charlotte, North Carolina 28202
Telephone:  (704) 343-2075
Facsimile:   (704) 373-8935

*Attorneys for Defendants Bank of America Corporation, J. Steele Alphin, Amy Woods Brinkley, Edward Brown III, Charles J. Cooley, Richard M. DeMartini, Barbara J. Desoer, James H. Hance, Jr., Kenneth D. Lewis, Liam E. McGee, Eugene McQuade, Alvaro de Molina, Michael E. O'Neill, Owen G. Shell, Jr., R. Eugene Taylor, F. William Vandiver, Jr., and Bradford H. Warner.*

12

# CERTIFICATE OF SERVICE

I, Dexter L. Pagdilao, Jr., HEREBY CERTIFY that on this 16th day of June, 2009 I electronically filed the foregoing Defendants' Memorandum Of Law In Support Of Their Motion To Stay Discovery As To Issues Of Market Timing with the Clerk of the Court using the ECF system, which will send notification of such filing to the counsel of record listed on the service list below. In addition, I placed copies of the foregoing documents in the U.S. Mail to the counsel of record listed below.

| | |
|---|---|
| Gregory Y. Porter<br>Bailey & Glasser LLP<br>601 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>Tel. 202-543-0226<br>Fax: 202-434-8252<br>Email: gporter@baileyglasser.com | J. Brian McTigue<br>McTigue & Veis LLP<br>4530 Wisconsin Ave., NW, Ste. 300<br>Washington, DC 20016<br>Tel. 202-364-6900<br>Fax: 202-364-9960<br>Email: bmctigue@mctiguelaw.com |
| Bryan T. Veis<br>McTigue & Veis LLP<br>4530 Wisconsin Ave., NW, Ste. 300<br>Washington, DC 20016<br>Tel. 202-364-6900<br>Fax: 202-364-9960<br>Email: bveis@mctiguelaw.com | Jennifer Hope Strouf, Esq.<br>McTigue & Veis LLP<br>4530 Wisconsin Ave., NW, Ste. 300<br>Washington, DC 20016<br>Tel. 202-364-6900<br>Fax: 202-364-9960<br>Email: jstrouf@mctiguelaw.com |
|  | Robert M. Elliot<br>Elliot Pishko Morgan, P.A.<br>426 Old Salem Road<br>Winston-Salem, NC 27101<br>Tel. 336-724-2828<br>Fax: 336-714-4499<br>Email: rmelliot@epmlaw.com |

Dated: June 16, 2009

/s/ Dexter L. Pagdilao, Jr.
Dexter L. Pagdilao, Jr.

O'Melveny & Myers LLP