# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:07cv11

| | | |
|---|---|---|
| **ELENA M. DAVID; ARLEEN J. STACH; and** | ) | |
| **VICTOR M. HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **Vs.** | ) | **ORDER** |
| | ) | |
| **J. STEELE ALPHIN; AMY WOODS** | ) | |
| **BRINKLEY; EDWARD J. BROWN, III;** | ) | |
| **CHARLES J. COOLEY; RICHARD M.** | ) | |
| **DeMARTINI;  BARBARA J. DESOER;** | ) | |
| **JAMES H. HANCE; LIAM E. McGEE;** | ) | |
| **EUGENE M. McQUADE; ALVARO G.** | ) | |
| **de MOLINA; MICHAEL E. O'NEILL;** | ) | |
| **OWEN G. SHELL, JR.; R. EUGENE** | ) | |
| **TAYLOR; F. WILLIAM VANDIVER, JR.;** | ) | |
| **BRADFORD H. WARNER; CHARLES W.** | ) | |
| **COKER; STEVEN JONES; KENNETH D.** | ) | |
| **LEWIS; BANK OF AMERICA** | ) | |
| **CORPORATION; BANK OF AMERICA** | ) | |
| **CORPORATION CORPORATE** | ) | |
| **BENEFITS COMMITTEE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on plaintiffs' Motion to Compel (#151)

and plaintiffs' Motion for Leave to File Under Seal Unredacted Version of Plaintiffs'

Reply Brief and Exhibits (#161) .  Plaintiffs seek to compel production of documents

sought in their first and second requests for production of documents.  Plaintiffs seek

the following:

(1)     documents responsive to requests 2-3, 6, 9, 11-13, 17, 19, 33, and 38-40 without excluding documents or redacting portions of documents that relate to the Bank of America Pension Plan;

(2)     documents responsive to requests 27-32 and 34 that concern the profitability and internal operations of the mutual funds offered as investment options in the Bank of America 401(k) Plan;

(3)     documents responsive to request 35 seeking trading cost analyses for investment options in the Bank of America 401(k) Plan;

(4)     documents responsive to request 37 which seeks all Corporate Benefits Committee minutes and attachments discussing the initial selection of each investment option employed in the 401(k) Plan after January 1, 2000; and

(5)     versions of all documents already produced in response to any request that are not redacted to exclude information merely on the grounds that it is non-responsive or irrelevant.

Plaintiffs also seek an order "enjoining" defendants from producing documents in the future redacted to exclude purported non-responsive or irrelevant material.

Defendants have timely filed a response and plaintiff's have timely filed their

reply. Having carefully considered such motion, the court enters the following discussion and Order, in which the five categories will be addressed *seriatim*.

## FINDINGS AND CONCLUSIONS

### I.    Documents Related to the Pension Plan

In their first request to compel production, plaintiffs seek documents responsive to requests 2-3, 6, 9, 11-13, 17, 19, 33, and 38-40 without excluding documents or redacting portions of documents that relate to the Bank of America Pension Plan. At the heart of this dispute is defendants' contention that because the plaintiff's Pension Plan claims were earlier dismissed by this court, documents related to such plans fall outside the scope of discovery as they are unrelated to defendants' governance of the 401(k) plan.

To summarize, this court earlier dismissed plaintiffs' claims concerning these defendants' management of the bank's Pension Fund inasmuch as such fund was a defined benefits plan, which resulted in plaintiffs being entitled to receive a defined sum regardless of Pension Fund performance. Lacking actionable harm, this court dismissed such causes of action as plaintiffs failed to state a claim. Defendants claim that since the Pension Fund claims have been dismissed, documents related to the Pension Fund are not relevant to the claims that remain. For the reasons that follow, the court disagrees.

The court believes defendants are mistaken in concluding that discovery requests that may touch on a previously dismissed claim cannot be relevant to the claims that remain. In this case, the documents sought are not sought to prove a previously dismissed claim; rather, they appear to be sought to prove the claims that remain. Plaintiffs contend that defendants served not only as the directors or plan administrators of the 401(k) Plan that remains at issue in this lawsuit, but were also directors or plan administrators of the Pension Plan, and that how they handled bank mutual funds in administering the Pension Plan may well be probative on whether they properly handled those same funds in the administration of the 401(k) Plan.

The scope of discovery in federal civil cases is both broad and liberal. In <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947), the Supreme Court has long held as follows:

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. But discovery, like all matters of procedure, has ultimate and necessary boundaries. As indicated by Rules 30(b) and (d) and 31(d), limitations inevitably arise when it can be shown that the examination is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry. And as Rule 26(b) provides,

further limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege.

Id., 329 U.S., at 507-508 (footnote omitted). The Court of Appeals for the Fourth Circuit has held that a trial court

has wide latitude in controlling discovery and that its rulings will not be overturned absent a showing of clear abuse of discretion. The latitude given the district court extends as well to the manner in which it orders the course and scope of discovery. Although it is unusual to find an abuse of discretion in discovery matters, a district court may not, through discovery restrictions, prevent a plaintiff from pursuing a theory or entire cause of action.

Ardrey v. United Parcel Service, 798 F.2d 679, 682 (4th Cir.1986) (citations and corresponding quotation marks deleted). Rule 26 allows parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence. Hinton v. Conner, 225 F.R.D. 513, 515 (M.D.N.C.2005).

It is undisputed that at the core of plaintiffs' remaining claims is their contention that defendants improperly favored the bank's own mutual funds, to their own enrichment and that of the bank and its affiliates, but to the detriment of the 401(k) Plan participants. Plaintiffs contend that this is a breach of defendants' fiduciary obligations to the 401(k) Plan, and that evidence relevant to that claim may be found in how these same fiduciaries handled such securities when it was the bank,

and not the participants, that were bearing both the costs and the risk. Key to this argument is plaintiffs' contention that these defendants served as the fiduciaries for both plans. Memorandum in Support (Docket Entry # 152), at p. 3. The relevancy of such material is obvious: documents that indicate a material difference in the manner in which defendants administered the Pension Plan as compared to the 401(k) Plan with respect to securities offered by the bank and its affiliates could be probative on plaintiffs' claim that defendants breached their duties of loyalty and prudence when selecting 401(k) Plan investment vehicles.

The court has also closely considered defendants' citation of <u>Spano v. Boeing Co.</u>, 2008 WL 1774460, at *2 (S.D. Ill. April 16, 2008), in which the district court held,[1] as follows:

> Plaintiffs' requests seeking discovery of documents regarding [plans other than the 401(k) plan] are simply not relevant to the subject matter of the complaint, which deals only with [the 401(k) plan.]

<u>Id.</u>, 2008 WL, at *2. While plaintiff has distinguished such decision on a number of grounds, the pivotal distinction appears to be that in <u>Spano</u>, plaintiffs did not argue that the fiduciaries who administered the 401(k) Plan also administered the comparison plans. Instead, it appears that they argued "that discovery of the non-VIP plans is relevant to finding out how Boeing used the plans in the master trust as a

---

[1]     Hon. Donald G. Wilkerson, United States Magistrate Judge.

whole to obtain services for each of the plans." <u>Spano v. Boeing Co.</u>, 2008 WL 1774460, 2 (S.D.Ill. 2008). The court earlier found that all of defendant's defined contribution plans were included in a master trust, that they were combined and managed together in a Master Trust, and that the plan at issue in the suit comprised 94% of the Master Trust.

While the undersigned certainly does not disagree with the disposition in <u>Spano</u>, the issue before this court appears to be quite different. In <u>Spano</u>, there is no contention that the Pension Plan and the 401(k) were in any way combined or that they were managed together.[2] In this case, plaintiffs contend that the Pension Plan and 401(k) Plan were not combined and managed separately - - but by the same fiduciaries - - making any contrast in their management decisions as to the same bank securities probative on the issue of whether they properly exercised their fiduciary obligations as to the 401(k) Plan.[3]

Finding such documents to relevant to plaintiffs' claims, defendants shall produce documents responsive to requests 2-3, 6, 9, 11-13, 17, 19, 33, and 38-40

---

[2] The <u>Spano</u> court states that only the defined contribution plans were combined. <u>Id.</u>, 2008 WL, at *1. The court has assumed that the court's reference to "traditional pension plans" means defined benefit plans. <u>Id.</u>

[3] Likewise, if there is evidence that these fiduciaries handled the bank securities in an identical fashion, such would also be relevant to showing that they did *not* breach their fiduciary duty.

without excluding documents or redacting portions of documents that relate to the Bank of America Pension Plan. As plaintiffs stated at page seven of their Reply (Docket Entry #160), such production shall be limited to Pension-related documents already identified through electronic discovery keyword searches.

## II.  Documents Related to Profitability and Internal Operations of the Offered Mutual Funds

Plaintiffs next seek documents responsive to requests 27-32 and 34 that concern the profitability and internal operations of the mutual funds offered as investment options in the Bank of America 401(k) Plan. In this request, plaintiffs seek information concerning the Affiliated Funds, specifically, documents that may go to show: (1) how profitable they were; (2) where those profits came from; (3) whether, for the Affiliated Funds to survive, they required the banks's 401(k) Plan investments; (4) whether they treated the bank's 401(k) Plan investors differently from other shareholders; and (5) whether the fund Boards engaged in genuine arm's-length negotiations with their investment advisors to obtain low and reasonable fees. See Memorandum in Support (Docket Entry #152), at p.6. Plaintiffs contend that documents relevant to such concerns are relevant to supporting plaintiffs' claims of improper selection and retention of the Affiliated Funds. Id.

In response, defendants argue that documents that were not reviewed by the fiduciaries cannot be relevant as to whether they fulfilled their fiduciary obligations

to the 401(k) Plan. Defendants argue, as follows:

> The Court should deny Plaintiffs' requests because such documents stretch far beyond any relationship between the mutual funds and the 401(k) Plan, and therefore lack relevance. The individual members of the CBC made the decisions about the 401(k) Plan's investment options that Plaintiffs challenge in this case. <u>What they did, saw, reviewed, and understood is what matters.</u> The "Affiliated Funds" are not defendants in this case, and their actions, separate and apart from their connection to the 401(k) Plan, are irrelevant to Plaintiffs' claims that the individual members of the CBC improperly and disloyally administered the 401(k) plan and chose illegal investment options.
>
> Moreover, Defendants have produced to Plaintiffs all of the key documents reflecting the analysis and thought-processes of the relevant decision-makers. Within the 1.3 million pages of documents produced to Plaintiffs are those reflecting the CBC's analyses and discussions of the 401(k) Plan's investment options. The custodians include all of the key members of the CBC, advisors to the CBC, and individuals associated in other relevant capacities to the 401(k) Plan. Defendants even produced analyses and discussions that might not have been performed at the direction of or provided to the CBC if they came up within the agreed-upon search parameters.10 (See Schmidt Decl., Ex. H.) With search terms including (mutual w/2 fund*), (fund w/3 expense*), (fund w/3 fee(s)) (Id., Ex. E), Plaintiffs received a broad array of documents, including documents reflecting the pertinent decisions of the relevant decision-makers, and even those documents the CBC may never have actually seen or discussed.

Defendants' Memorandum in Response (Docket Entry # 156), at pp. 9-10 (emphasis added).

The court respectfully disagrees with the thesis of defendants' argument, to wit, that "[w]hat they did, saw, reviewed, and understood is what matters." <u>Id.</u>, at p. 9. The court firmly believes that what a fiduciary did not do may also matter. In

<u>Holdeman v. Devine</u>, 2007 WL 3254969 (D.Utah Nov. 2, 2007), the district court held
that

> the court's ruling will be based solely on the record evidence of what Mr.
> Devine actually did or <u>did not do</u> while serving as Plan fiduciary and the
> effect those decisions had on the Plan's participants.

<u>Id.</u>, 2007 WL, at *6 (emphasis added).

The court also disagrees with defendants that the actions of the Affiliated Funds
are not relevant to their actions because "such documents stretch far beyond any
relationship between the mutual funds and the 401(k) Plan." Defendants'
Memorandum in Response (Docket Entry # 156), at p. 9. Defendants go on to admit,
however, that one of the fiduciary-defendants was "CEO of the investment advisor to
the Affiliated funds for part of the relevant period." <u>Id.</u>, at p.10. By way of example,
if the Affiliated Funds were sold to other institutional buyers with lesser costs and
fees, such may be probative on plaintiffs' theory that defendants breached their
fiduciary obligations to the 401(k) Plan, purportedly enriching themselves and the
bank at the expense of plan participants.

Such objections being overruled, defendants will be compelled to produce
documents responsive to requests 27-32 and 34 that concern the profitability and
internal operations of the Affiliated Funds offered as investment options in the Bank
of America 401(k) Plan.

### III.   Trading Cost Analyses

Plaintiffs also seek documents responsive to request 35 seeking trading cost analyses for investment options in the Bank of America 401(k) Plan.  Defendants' objections, which appear to be based on relevancy, appear to be without merit as trading costs appear to be most relevant to a fiduciary's evaluation of various plan investment options.  In *Understanding Retirement Plan Fees and Expenses* (May 2004), the United States Department of Labor advises, as follows:

> The Federal law governing private-sector retirement plans, the Employee Retirement Income Security Act (ERISA), requires that those responsible for managing retirement plans -- referred to as fiduciaries -- carry out their responsibilities prudently and solely in the interest of the plan's participants and beneficiaries. <u>Among other duties, fiduciaries have a responsibility to ensure that the services provided to their plan are necessary and that the cost of those services is reasonable.</u>

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html,   at   p.   1.   Again, defendants also raise the issue of a fiduciary not being responsible for what he or she does not know; however, as discussed above, such does not appear to be the case. Compounding the problem for defendants is their own admission that at least one fiduciary was the CEO of Bank of America Capital Management, the investment advisor to the Affiliated Funds, making access to such information practically unfettered.

Defendants' objections will be overruled and they will be compelled to provide

documents responsive to request 35 seeking trading cost analyses for investment

options in the Bank of America 401(k) Plan.

## IV.    Minutes and Attachments

In the fourth category of documents, plaintiffs seek documents responsive to

request 37 which seeks all Corporate Benefits Committee minutes and attachments

discussing the initial selection of each investment option "employed in the 401(k) Plan

after January 1, 2000."  Motion to Compel, at 1. This statement in the motion appears

to be wrong, inasmuch as Request 37 seeks

> for "each Affiliated Fund, the following documents whether created prior
> to or during the Time Period [January 1, 2000 to the Present]: (i) all
> Benefits Committee minutes (with exhibits) relating to the initial
> decision or deliberations regarding whether to offer the fund as a 401(k)
> Plan investment option and (ii) any documents submitted to or
> considered by the Benefits Committee in making the initial decision to
> offer the fund as a 401(k) Plan investment option.

See Moore Decl., Ex. C, at 5.   Inasmuch as all parties appear to have understood that

the issue raised is whether documents generated prior to January 1, 2000, should be

disclosed as such documents are outside the statute of limitations for ERISA.

In objecting to such request, defendant argues that the request is overbroad.

Further, in response to the Motion to Compel, defendant argues, as follows:

> Accommodating Plaintiffs' request would eviscerate ERISA's
> statute of limitations which is either six years after the violation occurred
> or three years from the date plaintiffs had "actual knowledge" of the
> violation. 29 U.S.C. § 1113. Plaintiffs filed their complaint on October

16, 2006. Even assuming Plaintiffs are entitled to the six-year period—which Defendants contest— the earliest date of conduct for which Defendants could be liable is October 16, 2000. Defendants agreed to produce documents as far back as January 1, 2000. (Schmidt Decl., Ex. D at pp. 2-3.) Plaintiffs should not be entitled to anything more because such documents will relate to unactionable, and therefore irrelevant, conduct. *See Buccino v. Continental Assur. Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983) (Under ERISA, defendants are immune from liability for initial investment decisions preceding the statute of limitations accrual date, even if they may be liable for subsequent actions stemming from those decisions.).

Plaintiffs' request should also fail because it is limitless. They argue that Request 37 is "not overbroad but quite narrow, since it is limited to committee minutes and documents considered by or submitted to the committee." (Mot. at 11.) Under this theory, Plaintiffs are entitled to any CBC minutes, no matter how old. The burden on Defendants of having to review and produce any and all CBC minutes outweighs Plaintiffs' need when Defendants have already produced documents predating the accrual date.

Memorandum in Response (Docket # 156), at pp. 11-12.

Thus, the issue raised is whether discovery related to decisions that predate the commencement of the period of limitations are discoverable, and if so, is such request overly broad or limitless, making such unduly burdensome on defendants under Rule 26. Clearly, what plaintiffs seek are documents related to the initial decision to include Affiliated Funds in the 401(k) Plan portfolio. The court agrees with defendants that they cannot be held liable for such initial decision (if it was made before the limitations period commenced) as it is outside the period of limitations. Discovery under Rule 26 is not, however, limited to materials upon which liability can

or cannot be founded; rather, discoverable material needs to be

> relevant to any party's claim or defense — including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.

Fed.R.Civ.P. 26(b)(1). Based on the arguments in plaintiffs' Reply, they do not seek such material to hold defendants liable for the initial decision to include the Affiliated Funds in the portfolio, but "to understand the original decision that led to those [subsequent] actions . . . ." Memorandum in Reply (Docket Entry # 160), at p. 10. In other words, plaintiffs desire to paint a complete picture at trial. Indeed, while defendants cannot be held liable for any purported improper decision that predates the commencement of the statute of limitations, such may well be relevant to whether defendants knew or did not know of allegedly unlawful nature of the investment and whether defendants had a continuing obligation, throughout the actionable period, to divest the fund of such securities.[4]

At this point, the court has not been made aware of the date on which the decision was made to include the Affiliated Funds in the portfolio offered by defendants to the 401(k) Plan participants. Whatever that date is, however, should be

---

[4]      The court's statement is not an endorsement of the legality or illegality of the inclusion of the Affiliated Funds; rather, the court is simply considering the possible relevance of such materials to plaintiffs' remaining claims under Rule 26. For all the court knows, the funds may well have been competitive with other similar funds and/or there may have other reasons to include such funds, such as demand from participants to include products of their employer.

discernable from the minutes of the committee or from transaction records. Thus, the request is not limitless as there is a point in time at which the decision to include these funds was first debated, and it is from there that logic dictates the production.

Defendants' objections are overruled and defendants shall produce documents responsive to request 37 which seeks all Corporate Benefits Committee minutes and attachments discussing the initial selection of the Affiliated Funds from the date inclusion of such funds was debated, discussed, or raised before the committee.

## V.   Redaction

In the fifth category, plaintiffs seek to compel versions of all documents already produced in response to any request in unredacted form where such redactions were based on grounds that the material is non-responsive or irrelevant. While defendants have pointed to case law which allows redaction of discovery materials by a producing party, the court is troubled by wholesale unilateral reduction of documents. As recently noted by another district court,

> [r]edaction is, after all, an alteration of potential evidence. The Federal Rules sanction only very limited unilateral redaction, see Fed.R.Civ.P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case. It should not come as a shock to those involved in litigation, that parties may see the outcome differently. Moreover, protective orders are available to shield irrelevant, but important-to-keep-confidential information, and unless the protective order permits partial production, a document should be produced in its entirety. On the other hand, where

a specific document is very large, and separated by clearly marked designations, or separate volumes, each section/volume becomes, more or less, a document in itself. However, generally worded sections of the large document may apply to specific sections whose potential relevance is unquestioned. Thus, unless a particular section unmistakably has no relevance whatsoever to the allegations in a complaint or denials/defenses in an answer, it should be produced along with the other relevant sections. And a word of warning to those who redact even under this standard-if you make unwarranted redactions, a court may well award sanctions for non-disclosure of requested evidence up to and including default/dismissal based on a seeming bad faith hiding of information.

Evon v. Law Offices of Sidney Mickell, 2010 WL 455476, f.n.1 (E.D.Cal. Feb. 3, 2010). In this case, a Protective Order is in place as well as a confidentiality agreement. As this court has witnessed firsthand, the parties are not shy in using either to protect (and rightfully so) documents that could be misused by those not party to this litigation. The court knows of no better way to ensure that a motion to compel will be filed than to unilaterally black out large portions of documents as the human mind is naturally curious. Other courts have approved the judicious use of unilateral redaction, allowing the offended party to challenge the redaction through *in camera* inspection. See Gates v. Rohm and Haas Co., 2007 WL 295416, f.n.1 (E.D.Pa. Jan. 29, 2007). The court believes, however, that the better view is that where a Protective Order is in place, that generally

the Federal Rules provide no procedural device for unilateral redaction by a party and it is a procedure that is not favored. See Fed.R.Civ.P. 26(c) "(the court ... may make any order which justice requires to protect

> a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (emphasis added)). Further, this litigation has a protective order in place that prevents non-litigants from viewing sensitive information.

In re FedEx Ground Package System, Inc., 2007 WL 79312, *5 (N.D.Ind. Jan. 5., 2007).

The court will, therefore, compel versions of all documents already produced in response to any request in unredacted form where such redactions were based on grounds that the material is non-responsive or irrelevant.

* * *

Finally, the court has considered plaintiffs' entitlement to fees and costs by prevailing on its Motion to Compel, as well as defendants' argument that much of what plaintiffs have sought is outside the terms of the "words and phrases" agreement under which this material was produced. Counterbalancing, at least in this court's mind, plaintiffs' right under Rule 37 is the additional cost that defendants will necessarily expend in producing or reproducing this material. The court believes the parties should resolve this issue between themselves and concentrate on concluding discovery and preparing for dispositive motions and trial as the last enlargement of time has been granted by the undersigned. While this court is compelling production of certain documents, at no time does it appear that defendants withheld any documents for any improper reason; rather, in each instance it appears that they had

a good faith and articulable belief that they had fully produced.

While the court <u>encourages</u> respective counsel to resolve the issue of attorneys fees and costs amicably, all counsel are advised that this court strictly adheres to the federal rules and applicable case law in the award of attorneys fees and costs under Rule 37(a)(5), Federal Rules of Civil Procedure. As has been made clear by the decisions of the Court of Appeals for the Fourth Circuit, an award of attorneys fees as part of an award of expenses to a prevailing party requires submission of affidavits. Such affidavits will typically include hourly rate statistics from a Bar association. Determination of the reasonableness of hourly rates is part of the required lodestar determination.

> In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. <u>Grissom v. The Mills Corp.</u>, 549 F.3d 313, 320 (4th Cir.2008). In deciding what constitutes a "reasonable" number of hours and rate, we have instructed that a district court's discretion should be guided by the following twelve factors:
>> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and

(12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989)).

After determining the lodestar figure, the "'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.' " *Grissom*, 549 F.3d at 321 (*quoting Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir.2002)). Finally, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks and citation omitted).

Robinson v. Equifax Information Services, LLC, 560 F.3d 235, 243 -244 (4th Cir. 2009). Of particular note in this case (inasmuch as the bulk of the legal work for plaintiffs appears to have been accomplished outside of the Charlotte Division), the Court of Appeals for the Fourth Circuit has repeatedly held that:

'[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.'

Id., at 244 (citation omitted). In this case, the court believes the relevant legal community would be the Charlotte legal community rather than the District of Columbia legal community. Indeed, the appellate court went on to hold in that case that

[a]lthough we recognize that the district court authored a very thorough memorandum opinion, we nonetheless conclude that it abused

its discretion by awarding the hourly rates requested by Robinson in the absence of 'satisfactory specific evidence of the prevailing market rates....'

Id., at 245 (citation omitted).

Any motion for fees, properly supported, must be filed within 14 days of entry of this Order. If the parties resolve such issue amicably -- which the court again encourages under Rule 1 -- such settlement of that issue should also be communicated to the court by a Notice filed through ECF within the same time frame.

\* \* \*

Finally, the court wishes to point out that while mediation is not due to be completed until discovery concludes, now may be an excellent time to consider mediation as it appears that the case has reached a critical juncture and claims and defenses are clearly coming into focus.

**ORDER**

**IT IS, THEREFORE, ORDERED** that

(1)     plaintiffs' Motion to Compel (#151) is **GRANTED,** and defendants shall

produce the documents as provided supra within 30 days of entry of this

Order;

(2)     any Motion for Attorneys Fees and Costs (or notice of amicable resolution) must be filed within 14 days of entry of this Order and properly supported; and

(3)     plaintiffs' Motion for Leave to File Under Seal Unredacted Version of Plaintiffs' Reply Brief and Exhibits (#161) is **ALLOWED** for the same reasons and under the same conditions as outlined in the court's Order dated March 16, 2010 (#157).

Signed: March 30, 2010

Dennis L. Howell
United States Magistrate Judge