**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Case No.:   07-cv-00011-RJC-DLH**

Elena M. David, Arleen J. Stach,          )
Victor M. Hernandez                     )
                                    )
       Plaintiffs,                 )   **THIRD AMENDED**
            v.                      )   **CLASS ACTION**
                                    )   **COMPLAINT**
J. Steele Alphin; J. Tim Arnoult; Catherine P.   )
Bessant ; Amy Woods Brinkley; Edward J.      )
Brown, III; Charles J. Cooley; Richard M.     )
DeMartini; Barbara J. Desoer; James H. Hance, )
Jr.; Kenneth D. Lewis, Jr.; Tim Mayopoulous;  )
Liam E. McGee; Eugene M. McQuade; Brian T. )
Moynihan; Alvaro G. de Molina; Owen G. Shell, )
Jr.; R. Eugene Taylor; F. William Vandiver, Jr.;  )
Bradford H. Warner, and Bank of America     )
Corporation,                              )
                                    )
       Defendants.               )

# TABLE OF CONTENTS

I.   NATURE OF THE ACTION ................................................................................. 1

II.  JURISDICTION AND VENUE........................................................................... 5

III. PARTIES ............................................................................................................ 5

    A.    Plaintiffs. ................................................................................................. 5

    B.    Defendants. .............................................................................................. 6

IV.  FACTUAL BACKGROUND............................................................................. 10

    A.    The Plans................................................................................................. 10

            1.    The Bank of America 401(k) Plan. ............................................. 10

            2.    The Bank of America Pension Plan. ........................................... 11

    B.    The Fiduciaries of the Plans Named as Defendants............................. 12

    C.    The Committee Defendants Caused The Plans To Engage In Prohibited
            Transactions And Breached Their Fiduciary Duties Of Prudence And Loyalty By
            Causing Or Allowing The Plans To Invest In Affiliated Funds That Paid
            Excessive Fees. ....................................................................................... 14

    D.    Defendants' Fraud or Concealment Relevant to Counts IV, VI, and VII............ 20

V.   ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS ................... 29

VI.  CLASS ALLEGATIONS ................................................................................... 34

VII. CLAIMS FOR RELIEF...................................................................................... 37

    COUNT I ............................................................................................................ 37

            Engaging in Prohibited Transactions by Causing the Plans to Invest in BoA
            Affiliated Funds (Violation of § 406 of ERISA, 29 U.S.C. § 1106 by Committee
            Defendants; brought on behalf of the Removal Class only)

    COUNT II ........................................................................................................... 39

            Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace the
            BoA Affiliated Funds as 401(k) Plan Investment Vehicles during the Removal
            Class Period, which Caused Losses to the 401(k) Plan (Violation of § 404 of
            ERISA, 29 U.S.C. § 1104 by Committee Defendants; brought on behalf of the
            Removal Class only)

COUNT III ............................................................................................................ 40

           BoA Violated ERISA by Knowingly Participating in Breaches of Fiduciary Duty
           and Prohibited Transactions (§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3);
           brought on behalf of the Removal Class only)

COUNT IV ............................................................................................................ 41

           Breach of Duties of Loyalty and Prudence by Selecting the Selection Class Funds
           as Investment Vehicles for the 401(k) Plan (Violation of § 404 of ERISA, 29
           U.S.C. § 1104 by Committee Defendants; brought on behalf of the Selection
           Class only)

COUNT V ............................................................................................................ 42

           Breach of Duties of Loyalty and Prudence by Selecting the Columbia Quality Plus
           Bond Fund as an Investment Vehicle for the 401(k) Plan (Violation of § 404 of
           ERISA, 29 U.S.C. § 1104 by Committee Defendants and Defendant BoA; brought
           on behalf of the Removal Class only)

COUNT VI ............................................................................................................ 43

           Liability for Breach of Co-fiduciary (Violation of § 405 of ERISA, 29 U.S.C.
           § 1105 by BoA; brought on behalf of the Selection Class only)

COUNT VII ............................................................................................................ 44

           Breach of Duty of Loyalty and Prudence by Providing Misleading and Inaccurate
           Information to Participants in the 401(k) Plan (Violation of § 404 of ERISA, 29
           U.S.C. § 1104, by BoA; brought on behalf of the Selection Class only)

VIII.   PRAYER FOR RELIEF ....................................................................................... 46

This action involves two pension plans sponsored by Bank of America Corporation: the Bank of America 401(k) Plan (the "401(k) Plan") and the Bank of America Pension Plan (the "Pension Plan") (and all predecessor and successor plans) (collectively the "Plans").

Plaintiffs allege the following on behalf of themselves and a class of similarly-situated participants in the Plans based on information and belief, discovery in this case, and an investigation by their counsel, which included reviewing: Forms 5500 ("Form 5500") for Plans filed with the United States Department of Labor ("DOL"); filings with the Securities and Exchange Commission, including Forms 11-K; documents related to the Plans provided by Bank of America Corporation ("BoA" or the "Company") to plaintiffs in connection with their employment by BoA and their participation in the Plans (including a Summary Plan Description ("SPD") for the Plans); and documents related to investment funds sold or managed by BoA Subsidiaries and Affiliates such as publicly available prospectuses and Statements of Additional Information.

## I. <u>NATURE OF THE ACTION</u>

1.     This case is about corporate self-dealing at the expense of the corporation's own employee pension plans. BoA employees, officers, and directors—who were responsible for directing the investment of the Plans—were required by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, to act solely in the interest of the Plans' participants and beneficiaries when making decisions with respect to removing, replacing, monitoring, or selecting the Plans' investments. Rather than fulfilling their fiduciary duties (the "highest duties known to the law"), which call for prudent investments at reasonable cost, the defendants selected and repeatedly failed to remove or replace BoA funds, which generated substantial fees for BoA, but offered high fees and poor performance to participants. There were, and are, many better-performing, lower-fee funds, but the defendants caused the Plans to

be invested in funds that benefited BoA, the sponsor of the Plans, not the Plans and their participants.

2. This is a civil enforcement action under ERISA, and in particular under ERISA §§ 404, 406, and 409, 29 U.S.C. §§ 1104, 1106 and 1109, for losses to the Plans caused by Defendants' breaches of fiduciary duty and violations of ERISA's prohibited transactions provisions.

3. The 401(k) Plan and the Pension Plan are retirement plans established and sponsored by BoA and its predecessors and successors.

4. Affiliates and subsidiaries of BoA include: Bank of America N.A. ("BoA Trust"), a Trustee for the Plans; Banc of America Capital Management LLC ("BACAP Management"); BACAP Distributors LLC ("BACAP Distributors"); Marsico Capital Management, LLC ("MCM"); Columbia Management Advisors ("CMA"); Columbia Fund Distributors, Inc. ("Columbia Distributors"); Columbia Management Group ("Columbia Management"); and FleetBoston Financial Corp. ("Fleet").

5. BACAP Management, BACAP Distributors, MCM, CMA, and Columbia Distributors are part of Columbia Management, BoA's primary asset management division.

6. BoA is the direct or indirect parent of Columbia Management.

7. According to Forms 5500 and SEC Forms 11-K, the assets of the Plans have been heavily invested in investment funds offered or managed by BoA Subsidiaries and Affiliates, including, but not limited to, Columbia Management. For example, the Form 11-K for FY 2004 shows that the 401(k) Plan invested approximately $2.271 billion in investment funds managed or offered by BoA Subsidiaries and Affiliates. These funds were wholly proprietary BoA funds, and all the profits they generated went to BoA subsidiaries and affiliates. The Form 5500 for FY

2001 shows that the Pension Plan invested approximately $2.923 billion in investment funds managed or offered by BoA Subsidiaries and Affiliates. Collectively, the Plans' investments in funds managed by BoA Affiliates and Subsidiaries generated tens of millions of dollars in fees for BoA. In addition, the Plans paid other fees, such as trustee, custodial and record-keeping fees, to BoA Subsidiaries and Affiliates.

8.     This class action is brought on behalf of the Pension Plan and the 401(k) Plan and their respective 208,000 and 174,000 participants for losses to the Plans caused by Defendants' breaches and engaging in ERISA-prohibited transactions. Two classes of these participants, the "Removal Class" and the "Selection Class" are defined below. All claims in this case, except claims related to the initial selection of the most of the funds at issue on or about June 15, 1999, are brought on behalf of the Removal Class. The sole claims brought on behalf of the "Selection Class" are for the initial selection of the funds at issue on June 15, 1999 (Count IV) and related concealment of that breach (Counts VI and VII). The classes are defined as follows:

Removal Class:  All participants in the Bank of America Pension Plan (and their beneficiaries) from August 7, 2000 through December 31, 2007 ("Removal Class Period"), and all participants in the Bank of America 401(k) Plan who, at any time during the Removal Class Period, were invested through the plan in any of the following five funds: Nations Large Cap Index Fund (now called the Columbia Large Cap Index Fund), Nations MidCap Index Fund (now the Columbia MidCap Index Fund), the Nations Managed Small Cap Index Fund (now the Nations Small Cap Index Fund), the Nations International Equity Fund (now the Columbia Multi-Advisor International Equity Fund), and the Columbia Quality Plus Bond Fund (now the Columbia Core Bond Fund). Excluded from the class are Defendants and Defendants' beneficiaries.

Selection Class:  All participants in the Bank of America 401(k) Plan who, at any time during the Selection Class Period (July 1, 2000 through December 31, 2007), were invested through the plan in any of the following ten funds: the Nations Value Fund (now called the Columbia Large Cap Value Fund), the Nations Bond Fund, the Nations Marsico Focused Equities Fund (now the Columbia Marsico Focused Equities Fund), the Nations LifeGoal Income and Growth Portfolio (now the Columbia LifeGoal Income and Growth Portfolio), the Nations LifeGoal Balanced Growth Portfolio (now the Columbia LifeGoal Balanced Growth Portfolio), and the Nations LifeGoal Growth Portfolio (now the Columbia

LifeGoal Growth Portfolio), Nations Large Cap Index Fund (now the Columbia Large Cap Index Fund), Nations MidCap Index Fund (now the Columbia MidCap Index Fund), the Nations Managed Small Cap Index Fund (now the Nations Small Cap Index Fund), and the Nations International Equity Fund (now the Columbia Multi-Advisor International Equity Fund). Excluded from the class are Defendants and Defendants' beneficiaries.

9. Plaintiffs are participants in the Plans under ERISA § 3(7), 29 U.S.C. § 1002(7).

10. Plaintiffs allege that Defendants, who are fiduciaries of the Plans, violated ERISA by causing the Plans to purchase and pay for investment management and other products and services from BoA Subsidiaries and Affiliates, which purchases and payments were prohibited transactions under ERISA § 406, 29 U.S.C. § 1106. More specifically, Defendants caused the Plans to invest Plan assets in BoA-proprietary investment funds offered and managed by BoA Subsidiaries and Affiliates and pay millions of dollars in investment management and other fees to BoA Subsidiaries and Affiliates in connection with said investments, which transactions were not exempt from ERISA § 406, 29 U.S.C. § 1106.

11. Plaintiffs also allege that Defendants failed to act solely in the interest of the participants and beneficiaries of the Plans and failed to exercise the required care, skill, prudence, and diligence in investing the assets of the Plans. More specifically, Plaintiffs allege that the fiduciaries of the Plans violated their fiduciary duties to the Plans under ERISA § 404, 29 U.S.C. § 1104, by causing the Plans to purchase shares of mutual funds offered by BoA Subsidiaries and Affiliates that charged significantly higher fees than, and had inferior performance to, comparable mutual funds available from other fund managers and fund families. In other words, the fiduciaries, who were employees, officers, or directors of BoA, placed the company's interest in generating fees ahead of the Plans' interests in making prudent investments at reasonable cost.

12. Plaintiffs further allege that the prohibited transactions and breaches of fiduciary duty by the Defendants in connection with the Plans' purchase of products and services from BoA Subsidiaries and Affiliates caused losses to the Plans for which the Defendants are personally liable to the Plans and their participants pursuant to §§ 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132(a)(2).

## II. JURISDICTION AND VENUE

13. ERISA provides for exclusive federal jurisdiction over these claims. The Plans are "employee benefit plans" within the meaning of § 3(3) of ERISA, 29 U.S.C. § 1002(3), and Plaintiff is a "participant" within the meaning of § 3(7) of ERISA, 29 U.S.C. § 1002(7), who is authorized pursuant to § 502(a)(2) and (3) of ERISA, 29 U.S.C. § 1132(a)(2) and (3) to bring the present action on behalf of the participants and beneficiaries of the Salaried Plan to obtain appropriate relief under §§ 502 and 409 of ERISA, 29 U.S.C. §§ 1132 and 1109.

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

15. This Court has personal jurisdiction over the Defendants because the Court has subject matter jurisdiction under ERISA.

16. Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## III. PARTIES

**A.   Plaintiffs.**

17. **Plaintiff Elena M. David**. Plaintiff David is a resident of Arcata, California. Plaintiff David is a participant in the Pension Plan and the 401(k) Plan. Plaintiff David invested in the Nations Large Cap Index Fund through the 401(k) Plan during the Class Period.

18. **Plaintiff Arleen J. Stach**. Plaintiff Stach is a resident of Covina, California. Plaintiff Stach is a participant in the 401(k) Plan. Plaintiff Stach invested in the Nations Large Cap Index Fund through the 401(k) Plan during the Class Period.

19. **Plaintiff Victor M. Hernandez.** Plaintiff Hernandez is a resident of Kernersville, North Carolina. Plaintiff Hernandez is a participant in the Pension Plan and the 401(k) Plan.

**B.     Defendants.**

20. **Defendant Bank of America Corporation**. BoA is the sponsor of the Plans and, thus, by definition, a party in interest to the Plans under ERISA. BoA is a holding company and its principal wholly-owned subsidiary is Bank of America National Association, through which BoA conducts much of its core banking activity. BoA also functioned as a fiduciary for the 401(k) Plan through its employees.

21. **Defendant Individual Members of the Bank of America Corporation Corporate Benefits Committee ("Committee Defendants")**. Under the Plans' governing documents, the Committee Defendants, all members of the Bank of America Corporation Corporate Benefits Committee ("Committee"), are responsible for administering the Plans and are fiduciaries under ERISA. All were high-level BoA executives (and/or executives of Bank of America National Association) when they served on the Committee. The following individuals served as Committee Members during the period relevant to this lawsuit, and are, collectively, the Committee Defendants:

A. **J. Steele Alphin** has been a member of the Committee since 2001; he was BoA's Chief Administrative Officer from 2006 through 2008, and its Principal Corporate Human Resources Officer from 2001-2006;

B. **J. Tim Arnoult** was a member of the Committee in 2004; from 2001-2004 he was Business Executive Technology and Operations Executive for Bank of America National Association; in 2004 he was Global Technology Services and Fulfill Executive for Bank of America National Association; from 2004-2007 he was Global Treasury Services President for Bank of America National Corporation;

C. **Catherine P. Bessant** was a member of the Committee in 2005; from 2002 through 2006 as she was Global Marketing Executive for BoA.;

D. **Amy Woods Brinkley** was a member of the Committee from 2001 through the present; from 2001 through the present she has served as BoA's Chief Risk Officer and Global Risk Executive;

E. **Edward J. Brown, III** was a member of the Committee from 2001 through 2004; during that time he served as President of Bank of America National Corporation's Global Corporate and Investment Banking division;

F. **Charles J. Cooley** was a member of the Committee from at least 1998 through 2000, and served as Secretary of the Committee during that time; he was Corporate Personnel Executive for Bank of America National Corporation during that time;

G. **Richard M. DeMartini** was a member of the Committee in 2001; he was CEO of the investment advisor to the Affiliated Funds, BACAP Management, during that time as well as Global Wealth and Investment Management President for Bank of America National Association;

H. **Barbara J. Desoer** has been a member of the Committee from 2001 through the present; from 2005 through 2007 she served as chairperson of the Committee; from 2001 through 2004 she was Consumer Products President for Bank of America National Association; from 2004-2008 she was Global Technology Services and Fulfill Executive for Bank of America National Association; in 2008 she became President of BOA's mortgage, home equity & insurance services division;

I. **James H. Hance, Jr.** served as member and chairman of the Committee from at least 1998 through 2004; during that time he was BoA's Chief Financial Officer; from 2004 through 2005 he was vice chairman of BOA's board of directors;

J. **Kenneth D. Lewis** served as a member of the Committee from at least 1998 through 2001; during that time he was BoA's President and Chief Operating Officer and was a member of BoA's Board of Directors from October 27, 1999 through at least 2009;

K. **Tim Mayopoulous** served on the Committee from 2005 through 2008; during that time he was BoA's Executive Vice President and General Counsel;

L. **Liam E. McGee** served on the Committee from 2004 through the present; during that time he served as Bank of America National Association's President of Consumer and Small Business Banking and as Transitional Executive II;

M. **Eugene M. McQuade** served on the Committee in 2004; during that time he was Bank of America National Association's President and Chief Operating Officer;

N. **Alvaro G. de Molina** served on the Committee from 2004 through 2005; during that time he served as BoA's Treasurer, Global Markets and Investment Banking President, and the Executive Administrator, Global Corporate and Investment Banking;

O. **Brian T. Moynihan** served on the Committee from 2007 through 2008; he also served as chairman of the Committee during that time; during that time he was Global Wealth and Investment Management President of Bank of America National Association and then Global Corporate and Investment Banking President of Bank of America National Association.

P. **Owen G. ("Bob") Shell, Jr.** served on the Committee from at least 1998 through 2001; during that time he was Asset Management Group (BAM) President for Bank of America National Association;

Q. **R. Eugene Taylor** served on the Committee from 2001 through 2007; during that time he was BoA's Vice Chairman and Bank of America National Association's Global Corporate and Investment Banking President;

R. **F. William Vandiver, Jr.** served on the Committee from at least 1998 through 2002;

S. **Bradford H. Warner** served on the Committee in 2004; during that time he was Vice Chairman of Investment Services for Bank of America National Association.

# IV. FACTUAL BACKGROUND

**A.      The Plans.**

**1.      The Bank of America 401(k) Plan.**

22.      On information and belief, the 401(k) Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined contribution plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  Pursuant to ERISA, the relief requested in this action is for the benefit of the 401(k) Plan.

23.      The 401(k) Plan was created effective July 1, 2000 through the merger of the BankAmerica 401(k) Plan and the NationsBank 401(k) Plan.

24.      BoA is the sponsor of, and fiduciary for, the 401(k) Plan.

25.      The Committee Defendants are the plan administrator and are responsible for the overall operation and administration of the 401(k) Plan, including the selection of 401(k) Plan investment options.

26.      BoA Trust is the Trustee for the 401(k) Plan's assets other than company matching contributions, which are held in a separate trust that invests primarily in BoA common and preferred stock.

27.      The 401(k) Plan pays various fees directly to service-providers, some of which are BoA Subsidiaries and Affiliates.  Such fees include, for example, fees paid to BoA Trust for trustee and custodial services.

28.      The 401(k) Plan also invests, pursuant to the direction of the Committee, billions of dollars in mutual funds offered or managed by BoA Subsidiaries and Affiliates, which investments have generated millions of dollars of investment advisory and other fees for BoA. The 401(k) Plan contains several investment options, all monitored and selected by the Defendants.  According to the Form 11-K and the Form 5500 for the year 2003, for example, the

401(k) Plan contained nineteen investment funds, a stable capital fund, a BoA common stock fund, and seventeen mutual funds. Of the seventeen mutual funds, ten are from the Nations Funds and Columbia Funds mutual fund families, which are administered and advised by BoA affiliates, including BACAP Management, MCM, and CMA. An additional proprietary fund, the Columbia Quality Plus Bond Fund, was added on December 17, 2004. These funds included the following five funds (**the "Affiliated Funds"**) offered during the class period: the Nations LargeCap Index Fund, the Nations MidCap Index Fund, the Nations SmallCap Index Fund, the Nations International Equity Fund, and the Columbia Quality Plus Bond Fund. Before 2003, only mutual funds affiliated with BoA were offered in the 401(k) Plan.

### 2. The Bank of America Pension Plan.

29. On information and belief, the Pension Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). Pursuant to ERISA, the relief requested in this action is for the benefit of the Pension Plan.

30. BoA is the sponsor of the Pension Plan.

31. Committee Defendants are the Pension Plan administrator, and are responsible for the overall operation and administration of the Pension Plan, including the selection of Pension Plan investment options.

32. BoA Trust is the Trustee for the Pension Plan's assets.

33. The Pension Plan pays various fees directly to service-providers, some of which are BoA Subsidiaries and Affiliates. Such fees include, for example, fees paid to BoA Trust for trustee and custodial services and investment management fees paid to BACAP Management.

34. The Pension Plan's assets are invested and monitored by the Committee Defendants with the assistance of several portfolio managers, some of whom are BoA

Subsidiaries and Affiliates. The Pension Plan pays certain investment management fees directly to the BoA portfolio managers who assist the Committee Defendants.

35. The Pension Plan also invests, pursuant to the direction of the Committee Defendants and the advice of the BoA portfolio managers that assist it, billions of dollars in funds affiliated with BoA, including the Affiliated Funds, which investments have generated millions of dollars of investment advisory and other fees for BoA. For example, in 2002 and 2001, Pension Plan assets totaling $3,469,192,423 and $4,580,682,827 respectively were managed by BACAP Management. In 2001, $2,923,355,774 of Pension Plan assets managed by BACAP Management were invested in funds affiliated with BoA, including the Affiliated Funds.

**B.    The Fiduciaries of the Plans Named as Defendants.**

36. ERISA requires every plan to provide for one or more named fiduciaries of the Plan pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1002(21)(A).

37. ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA § 402(a)(1), but also any other persons who in fact perform fiduciary functions. ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i) (stating that a person is a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . .").

38. Each of the Committee Defendants is a fiduciary to the Plans and owes fiduciary duties to the Plans and their participants under ERISA in the manner and to the extent set forth in the documents governing the Plans, through their conduct, and under ERISA.

39. BoA was a functional fiduciary for the 401(k) Plan and acted through its employees and agents, including without limitation David Andreasen, who was Senior Vice President and Director of Retirement Plans, and Arthur Colas, a BoA in-house benefits attorney

who at times handled participant communications. BoA's fiduciary functions included exercising discretion in determining the content of communications with participants regarding the 401(k) Plan, e.g. concerns related to the investment options in the 401(k) Plan, and exercising discretion in responding to participant complaints and inquiries. Among other things, ▮▮▮▮▮

████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████ In addition, BoA was a functional fiduciary in exercising the discretion to make the decision to offer the Columbia Quality Plus Bond Fund as an investment option in the 401(k) Plan.

40. The Committee Defendants are the Named Fiduciary and administrator of the Plans pursuant to ERISA § 402(a)(2), 29 U.S.C. § 1029(a)(2), and the documents governing the Plans, and are charged with administering and maintaining the Plans. The Committee Defendants' duties include selecting, monitoring, and, when necessary, removing or replacing the Plans' investments. The Committee Defendants exercise broad responsibility for management and administration of the Plans, including oversight of the Plans' investment options, policies, and the performance of the Plans' investments, as well as the review of investment managers.

41. In their capacity to monitor investments for the Plans, the Committee Defendants have the discretion and authority to suspend, eliminate, or reduce any of the Plans' investments, including investments managed or offered by BoA Subsidiaries and Affiliates. The Committee

Defendants met three to four times per year during the relevant period to assess the performance of the Plans' investments and make decisions regarding whether to remove or replace any such investments.

**C.    The Committee Defendants Caused The Plans To Engage In Prohibited Transactions And Breached Their Fiduciary Duties Of Prudence And Loyalty By Causing Or Allowing The Plans To Invest In Affiliated Funds That Paid Excessive Fees.**

42.    The Plans pay fees for investment management and other services.  Some of these fees are paid indirectly by the Plans through the Plans' investments in funds affiliated with BoA.  Other fees are paid directly by the Plans to service providers such as actuaries, accountants, and investment managers, many of which are BoA Subsidiaries and Affiliates.

43.    Among other things, the Committee Defendants are responsible for making decisions with respect to removing, replacing, or selecting investments and service-providers for the Plans, which decisions must be made prudently and solely in the interest of the Plans' participants and beneficiaries.

44.    The Committee Defendants had the primary discretion to make decisions with respect to the investments available under the 401(k) Plan and to direct the investment of Pension Plan assets.  Over many years, the Committee Defendants used that discretion to direct billions of dollars in the Plans' assets into funds affiliated with BoA, including the Affiliated Funds.  In 2003, the 401(k) Plan's investments in the Affiliated Funds totaled $1.31 billion.  In 2001, the Pension Plan's investments in the Affiliated Funds totaled $1.11 billion.

45.    The Affiliated Funds paid BoA Subsidiaries and Affiliates tens of millions of dollars in annual fees for investment advisory, custodial, trust, administrative and other services, which fees were passed on to investors in the Affiliated Funds, including the Plans, by deducting such fees from the money they invested in the Affiliated Funds.

46. Committee Defendants knew or should have known that the fees paid by the Affiliated Funds to BoA Subsidiaries and Affiliates were excessive and that the Affiliated Funds' performance was poor. Committee Defendants knew or should have known that similar better-performing investment funds that paid substantially lower fees to investment advisors and other service providers were available from unaffiliated investment managers and fund families.

47. Investments by retirement plans unaffiliated with BoA constituted only 2-5% of retirement plan investments in Affiliated Funds. In other words, BoA Plans represented 95% or more of total retirement plan investments in Affiliated Funds. This shows that Affiliated Funds were not attractive to unaffiliated plans in arms-length transactions.

48. Without the "critical mass" or "seed money" provided by the Plans' investments in the Affiliated Funds, BoA would not have been able to attract other investors to the Affiliated Funds and make a profit from offering them.

49. For each year in which the Plans invested in the Affiliated Funds, BoA Subsidiaries and Affiliates received millions of dollars in investment advisory and other fees for investment management and other services provided to the Affiliated Funds, which was paid indirectly by the Plans and which inured to the benefit of BoA.

50. The Plans' investments in the Affiliated Funds were prohibited transactions under ERISA, as were the direct payment of investment management and other fees to BoA.

51. Committee Defendants also breached their fiduciary duties of prudence and loyalty under ERISA by causing or allowing the Plans to invest substantial portions of their assets in Affiliated Funds which paid investment management and other related fees to BoA Subsidiaries and Affiliates that were higher than fees available from unaffiliated funds and unaffiliated mutual funds or investment managers. Although these fees were paid directly by the

mutual fund to the BoA Subsidiary or Affiliate, the fees were nevertheless paid indirectly by the

Plan and the payment of such fees had a direct and detrimental impact on the value of the Plans'

assets as earnings for the Affiliated Funds were passed on to investors net of fees.  As United

States Department of Labor studies have recognized, the

> [e]xpenses of operating and maintaining an investment portfolio that are debited against the participant's account constitute an opportunity cost in the form of foregone investments in every contribution period.  The laws of compound interest dictate that these small reductions in investment are magnified greatly over the decades in which many employees will be 401(k) plan participants. … The effect of … higher levels of expenses would be to reduce the value of potential future account balances for these participants.

*Study of 401(k) Plan Fees and Expenses* (Apr. 13, 1998) ("Fee Study") (available at

http://www.dol.gov/ebsa/pdf/401krept.pdf.)  Applied to a multi-billion dollar portfolio over

several years, the compounded opportunity cost of excessive fees causes substantially reduced

pension plan assets.

52.    Consider, for example, Table 1 below, which shows the excessive investment

advisory fees extracted from the Plans on the Plans' investment (that is, the 401(k) Plan's and the

Pension Plan's investments) of $1,536,537,179 in one of the Affiliated Funds, the Nations

LargeCap Index Fund, in 2001 as compared to similar index funds available from companies

other than BoA.

Table 1

| (1 basis point = .0001) | Nations Fund | Benchmark Vanguard Fund | Excess of Vanguard |
|---|---|---|---|
| Basis points | 35 | 6 | 29 |
| Fees $$ | $5,377,880 | $921,922 | $4,455,958 |

The Vanguard Index Fund is one sixth the cost of the Nations LargeCap Index Fund.  A loyal,

prudent, and unconflicted fiduciary would not have chosen to invest over $1.5 billion of the

Plans' assets in a fund that charged six times that of a sound competitor for the same product. Compounded over several years, the annual $4.4 million in fees in excess of the Vanguard Fund results in substantially reduced plan assets over time. Moreover, the substantial value of the lost investment opportunity inured directly to the benefit of BoA because BoA both collected the fees and earned profits thereon, sums which rightfully belonged to the Plans.

53. Table 1 only tells part of the story. With over $1.5 billion to invest in a single fund, the Plans' fiduciaries likely could have negotiated a single client or separate account investment at rates below those charged by even the Vanguard Fund described in Table 1. "Very large plans can achieve even greater investment management savings by establishing separate accounts for their 401(k) assets." (*Fee Study*.)

54. Similar excessive investment advisory fees and commensurate opportunity losses are found for many, if not all, of the Affiliated Funds in which the Plans invested. For example, in 2003, the 401(k) Plan paid excessive investment advisory fees on its investment in the Nations MidCap Index Fund. The Nations MidCap Index Fund charged 40 basis points whereas a Vanguard MidCap Index Fund paid only 8 basis points in investment advisory fees in 2003.

55. In addition to excessive fees, the Affiliated Funds also offered poor performance. For example, in aggregate, during the Removal Class Period, 401(k) Plan participants would have earned over $79 million more if they had earned, on the money they invested through the 401(k) Plan in the Affiliated Funds, the returns of comparable Vanguard funds, rather than the returns of the Affiliated Funds themselves. Specifically, the Nations MidCap Index Fund underperformed comparable Vanguard funds by over $33 million, the Nations Large Cap Index Fund underperformed by over $21 million, the Nations International Equity Fund underperformed by over $21 million, and the Columbia Quality Plus Bond Fund underperformed

by over $4 million. (There is no Vanguard fund comparable to the Nations Small Cap Index Fund, but it underperformed its benchmark by over $4 million).[1]

56.     The Committee Defendants met multiple times per year during the relevant period to monitor the performance of investments in the Plans, including the Affiliated Funds. Despite poor performance and high fees, the Committee Defendants failed to remove or replace any of the Affiliated Funds as investment options in the Plans during the Class Period.

57.     The Plans have suffered millions of dollars a year in losses because the Committee Defendants have forced the Plans to invest billions of dollars in BoA-affiliated mutual funds that offered poor performance and paid excessive investment advisory and other fees. ERISA prohibits a plan from investing in the plan sponsor's investment products unless the fiduciary or sponsor can prove that the transactions are exempt. Even if Defendants can prove the transactions are exempt from ERISA § 406, 29 U.S.C. § 1106, ERISA does not permit such arrangements when they are not solely in the interest of the plan or when a prudent, unconflicted fiduciary would choose differently.

58.     Defendants have admitted that the Affiliated Funds charged excessive fees. BoA applied to the Department of Labor for an "individual exemption," PTE 2001-46, to a specific transaction involving the Pension Plan. BoA, apparently through a Texas-based affiliate, sought an exemption to conduct an in-kind transfer of the Pension Plan's pro rata interest in the securities that make up various Nations Funds portfolios. *See* PTE 2001-46, 66 Fed. Reg. 39351 (July 30, 2001); 66 Fed. Reg. 64280 (Dec. 12, 2001) ("Exemption"). The reason for seeking the exemption, BoA explained, was that the fees associated with certain Affiliated Funds in which the Pension Plan invested were too high and the Pension Plan had sufficient assets to manage its

---

[1] These figures are based upon a beginning date of June 1, 2000 (the quarter in which the Class Periods begin), and an end date of December 31, 2007, which is the end of each Class Period.

assets at lower cost outside of mutual funds. The 401(k) Plan, for which participants paid the fees indirectly, was of comparable size to the Pension Plan, but it invested in many of the same funds that the Pension Plan, for which BoA paid the fees indirectly, regarded as too expensive.

59.     Defendants also caused the Plans to invest in Affiliated Funds when they knew that the Affiliated Funds were suffering from market timing and late-trading from at least July 2000 through July 2003.  New York Attorney General Eliot Spitzer first made public the market-timing and late-trading allegations through a press release from his office on September 3, 2003, that alleged BofA involvement in late trading and market timing of mutual funds, including the Affiliated Funds.  The market-timing and late-trading abuses are further described in settlements and agreements between (1) a Federal Reserve Bank and the Bank, (2) the Comptroller of the Currency and the Bank of America, N.A. (the Plans trustee), and (3) New York Attorney General Eliot Spitzer and several Bank Units, including Bank of America Securities (BAS) and BACAP LLC, who initiated and facilitated the market-timing and late-trading practices.

60.     BAS and BACAP LLC helped Canary Capital Partners, LLC and affiliates thereof (collectively "Canary") to market-time and late-trade Affiliated Funds.  In so doing, these BoA Affiliates dealt with Canary on terms more favorable than those offered to the Plans.  A settlement of the claims brought by Attorney General Spitzer was executed on or about February 2005 and signed by Alvaro de Molina (a defendant in this case and former member of the CBC) .  It illustrates Canary's preferential treatment.  Mr. de Molina agreed, for purposes of the settlement of the claims brought by Attorney General Spitzer, that various Bank Units "facilitated market timing and late trading … at the expense of shareholders of Nations Funds…"  The settlement describes how Bank of America Securities, the Bank Unit for which Mr. de Molina was CEO, installed the Bank's proprietary mutual fund trading system at Canary's

executives homes and offices to facilitate preferential after-hours trading in Nations Funds. BACAP LLC, another signatory to the Canary settlement with Attorney General Spitzer, was investment manager for more than $3 billion in Pension Plan assets when it facilitated Canary's late trading and market timing of Nations Funds, to the detriment of both Plans. Thus, the Plans' invested in Affiliated Funds on terms and conditions less favorable than those provided to Canary.

**D.    Defendants' Fraud or Concealment Relevant to Counts IV, VI, and VII.**

61.    In order to conceal their fiduciary misconduct in their selection of the investment alternatives that would be available under the merged 401(k) Plans effective July 1, 2000, the Committee Defendants and BoA engaged in overt acts designed to conceal the Committee Defendants' fiduciary breaches. Committee Defendants and BoA did so by misleading Plan participants into believing that the use of proprietary mutual funds was proper and that the Committee Defendants had acted in accordance with their fiduciary obligations when selecting the Plan's investment alternatives.

62.    Prior to their 1998 corporate merger, NationsBank Corp. and BankAmerica Corp. sponsored the NationsBank 401(k) Plan and the BankAmerica 401(k) Investment Plan, respectively.

63.    Following the corporate merger, BoA determined to consolidate the 401(k) plans in an amended and restated plan document for the new plan. The new consolidated plan was named the Bank of America 401(k) Plan, and it came into existence effective July 1, 2000.

64.    Following the corporate merger, the Committee Defendants had overall responsibility for administration of all of BoA's employee benefit plans.

65.    REDACTED

REDACTED

66. REDACTED

67. REDACTED

68. REDACTED

Third Amended Complaint

REDACTED

69. The Committee Defendants' selection process fell far short of ERISA's fiduciary standards.

70. In September 1999, a class action complaint was filed naming First Union Bank as a defendant and alleging breaches of the fiduciary duties of prudence and loyalty with regard to the selection of proprietary mutual funds available under the First Union 401(k) Plan.

71. REDACTED

72. REDACTED

73.    REDACTED

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ Further, the Committee Defendants did not consider at any time any unaffiliated alternatives to the Selection Class Funds or perform a diligent search, by asset class and investment style, on a fund-by-fund basis, to determine which funds were in the best interests of the Plan and its participants.

74.    REDACTED

75.    REDACTED

████████████████████████████████████████████

76.    REDACTED

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████ Nor did the Committee Defendants conduct a diligent search, or any search at all, from among the universe of qualified investment

managers and funds to determine whether the selection of this fund was in the best interests of the Plan and its participants.

77. 

78.    The breaches of fiduciary duty were apparent to anyone knowledgeable about ERISA's fiduciary duties, and with information regarding the Committee Defendants' selection process.  Any reasonably prudent investigation into the Committee Defendants' process would have revealed the fiduciary breaches.  That is, the Committee Defendants either knew or should have known that their fund selection process fell far short of meeting ERISA's fiduciary standards, and the report provided to the Committee Defendants on December 6, 1999 was a sham.

79.    [REDACTED] Mr. Gordon worked under Mr. Shell, then a Committee Defendant and head of BoA's asset management business  Mr. Shell suffered from a direct and personal conflict of interest because his compensation depended in part on the revenues generated by the Selection Class Funds.

80.    A series of communications prepared by BoA employees for the purpose of responding to inquiries from Plan participants addressed the rollout of BoA's new retirement programs, and indicated that the plans were in full compliance with the law:

a. REDACTED



b. REDACTED

c. REDACTED

d. In response to participant David Mackenzie's correspondence addressed to the Secretary of the Committee and others at BoA raising questions regarding the replacement of a collective investment fund with a Nations Mutual Fund, the Bank's in-house benefits counsel, Arthur H. Colas, Jr., sent two letters to Mr. Mackenzie that misled him into believing that nothing improper had occurred in the selection of the funds. Mr. Colas referred to ERISA provisions that did not present compliance problems, while failing to provide information and facts regarding the Committee Defendants' biased and otherwise woefully defective investment selection process. Mr. Colas indicated that "serious consideration" had been given to Mr. Mackenzie's concerns regarding the Plan investment options, and that they had been "discussed fully with Bob Shell, who …is a member of the Corporate Benefits Committee and head of the Bank's fiduciary group." Mr. Colas also indicated that the "Committee is, and has been for years, advised by competent outside legal counsel, and duties of Plan fiduciaries are discussed at its meetings. The Plan fiduciaries have considered the appropriate factors in making their decisions." REDACTED ████████████████ ████████████████████████████ There is no indication that Mr. Mackenzie's concerns were given any consideration whatsoever, let alone "serious consideration," and the representation that the fiduciaries considered the appropriate facts in making their decision was also false.

e. REDACTED ████████████████████████████

████████████████████████████

████████████████████████████

REDACTED

f.  REDACTED

81.  REDACTED

82.     The Committee was the Plan Administrator and, as such, bore fiduciary responsibility for communicating to participants about the Plan.  BoA, acting through its employees who prepared the misleading and inaccurate communications, exercised discretionary administrative authority and was therefore acting as a fiduciary in preparing responses to inquiries from Plan participants.  Accordingly, the Committee Defendants and BoA had a duty to ensure that responses to Plan participant inquiries were accurate, truthful, and fully disclosed material information.  Instead, the Committee Defendants and BoA caused or permitted communications to Plan participants that concealed the Committee Defendants' breaches of duty

in selecting Plan investments in 1999 and misrepresented the actions of the Committee Defendants in selecting such investments.

83.    The documents prepared for use in responding to participant inquiries regarding the propriety of the funds selected as investment options under the Plan contained inaccurate, misleading, and incomplete information regarding the Committee Defendants' selection process.

84.    BoA's in-house benefits counsel, Arthur H. Colas, Jr., was acting on behalf of both BoA and the Committee when he made false and misleading statements to Mr. David Mackenzie and Ms. Susan Kirk regarding the appropriateness of the funds the Committee Defendants selected and the prudence and loyalty of their selection process. Mr. Colas responded to Mr. Mackenzie's letter addressed to the secretary of the Committee, and the response was discussed with Committee Defendant Owen G. ("Bob") Shell prior to sending it.

85.    REDACTED

Among other things, these communications said that it was proper for the Plan to invest in BoA-affiliated funds and that the Committee Defendants had carefully evaluated the funds. Both statements were false because the Committee Defendants had not performed any analysis of the funds when they were selected nor considered the various factors identified in the communications to participants.

86.    The Committee Defendants concealed their fiduciary breaches when they deliberately concealed vital information regarding their investment selection process and applicable law in response to participant requests for information.

87.    REDACTED

REDACTED

88.     As the Plan's named fiduciary responsible for Plan administration, and as high-level executives and officers of BoA, Committee Defendants knew that the representations made to auditors REDACTED regarding possible ERISA violations were false and misleading, and they did so deliberately to conceal their fiduciary misconduct from Plan participants and the U.S. Department of Labor.

## V. ERISA'S FIDUCIARY STANDARDS & PROHIBITED TRANSACTIONS

89.     ERISA imposes strict fiduciary duties of loyalty and prudence upon the Defendants as fiduciaries of the Plan.   ERISA § 404(a), 29 U.S.C.§ 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and —
>
> (A)     for the exclusive purpose of
>
>> (i)     providing benefits to participants and their beneficiaries; and
>>
>> (ii)    defraying reasonable expenses of administering the plan;
>
> (B)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>
> (C)     by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and
>
> (D)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title and Title IV.

90.     ERISA also imposes explicit co-fiduciary duties on plan fiduciaries.  ERISA

§ 405, 29 U.S.C. § 1105, states, in relevant part, that:

> In addition to any liability which he may have under any other provision
> of this part, a fiduciary with respect to a plan shall be liable for a breach of
> fiduciary responsibility of another fiduciary with respect to the same plan
> in the following circumstances:
>
> (1)     if he participates knowingly in, or knowingly undertakes to
> conceal, an act or omission of such other fiduciary, knowing such
> act or omission is a breach; or
>
> (2)     if, by his failure to comply with section 404(a)(1) in the
> administration of his specific responsibilities which give rise to his
> status as a fiduciary, he has enabled such other fiduciary to commit
> a breach; or
>
> (3)     if he has knowledge of a breach by such other fiduciary, unless he
> makes reasonable efforts under the circumstances to remedy the
> breach.

91.     Under ERISA, fiduciaries that exercise discretionary authority or control over the

selection of plan investments and the selection of plan service providers must act prudently and

solely in the interest of participants in the plan when selecting investments and retaining service

providers.  Thus, "the duty to conduct an independent investigation into the merits of a particular

investment" is "the most basic of ERISA's investment fiduciary duties."  *In re Unisys Savings*

*Plan Litig.*, 74 F.3d 420, 435 (3d Cir. 1996).  As the Department of Labor explains,

> [T]o act prudently, a plan fiduciary must consider, among other factors, the
> availability, riskiness, and potential return of alternative investments for his or her
> plan. [Where an investment], if implemented, causes the Plan to forego other
> investment opportunities, such investments would not be prudent if they provided
> a plan with less return, in comparison to risk, than comparable investments
> available to the plan, or if they involved a greater risk to the security of plan
> assets than other investments offering a similar return.

DoL Ad. Op. No. 88-16A.

92.     Pursuant to these duties, fiduciaries must ensure that the services provided to the

plan are necessary and that the fees are reasonable:

Under section 404(a)(1) of ERISA, the responsible Plan fiduciaries must act prudently and solely in the interest of the Plan participants and beneficiaries both in deciding … which investment options to utilize or make available to Plan participants or beneficiaries. In this regard, the responsible Plan fiduciaries must assure that the compensation paid directly or indirectly by the Plan to [service providers] is reasonable … .

DoL Ad. Op. 97-15A; DoL Ad. Op. 97-16A

93.     A fiduciary's duty of loyalty requires a fiduciary to act solely in the interest of plan participants and beneficiaries.  As the Department of Labor has repeatedly warned:

We have construed the requirements that a fiduciary act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and beneficiaries as prohibiting a fiduciary from subordinating the interests of participants and beneficiaries in their retirement income to unrelated objectives. Thus, in deciding whether and to what extent to invest in a particular investment, a fiduciary must ordinarily consider only factors relating to the interests of plan participants and beneficiaries in their retirement income. A decision to make an investment may not be influenced by [other] factors unless the investment, when judged solely on the basis of its economic value to the plan, would be equal or superior to alternative investments available to the plan.

DoL Ad. Op. No. 98-04A; DoL Ad. Op. No. 88-16A.

94.     Department of Labor counsels that fiduciaries are responsible for ensuring that a plan pays reasonable fees and expenses and that fiduciaries need to carefully evaluate differences in fees and services between prospective service providers:

While the law does not specify a permissible level of fees, it does require that fees charged to a plan be "reasonable." After careful evaluation during the initial selection, the plan's fees and expenses should be monitored to determine whether they continue to be reasonable.

In comparing estimates from prospective service providers, ask which services are covered for the estimated fees and which are not. Some providers offer a number of services for one fee, sometimes referred to as a "bundled" services arrangement. Others charge separately for individual services. Compare all services to be provided with the total cost for each provider. Consider whether the estimate includes services you did not specify or want. Remember, all services have costs.

Some service providers may receive additional fees from investment vehicles, such as mutual funds, that may be offered under an employer's plan. For example,

mutual funds often charge fees to pay brokers and other salespersons for promoting the fund and providing other services. There also may be sales and other related charges for investments offered by a service provider. Employers should ask prospective providers for a detailed explanation of all fees associated with their investment options.

*Meeting Your Fiduciary Responsibilities* (May 2004) (available at

http://www.dol.gov/ebsa/publications/fiduciaryresponsibility.html).

In a separate publication, the Department of Labor writes:

Plan fees and expenses are important considerations for all types of retirement plans. As a plan fiduciary, you have an obligation under ERISA to prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to your plan. Understanding and evaluating plan fees and expenses associated with plan investments, investment options, and services are an important part of a fiduciary's responsibility. This responsibility is ongoing. After careful evaluation during the initial selection, you will want to monitor plan fees and expenses to determine whether they continue to be reasonable in light of the services provided.

\* \* \*

By far the largest component of plan fees and expenses is associated with managing plan investments. Fees for investment management and other related services generally are assessed as a percentage of assets invested. Employers should pay attention to these fees. They are paid in the form of an indirect charge against the participant's account or the plan because they are deducted directly from investment returns. Net total return is the return after these fees have been deducted. For this reason, these fees, which are not specifically identified on statements of investments, may not be immediately apparent to employers.

*Understanding Retirement Plan Fees and Expenses* (May 2004) (available at

http://www.dol.gov/ebsa/publications/undrstndgrtrmnt.html.)

95.    A fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows or reasonably should know would lead to an imprudent result, or would otherwise harm plan participants or beneficiaries. ERISA § 404(a)(1)(d), 29 U.S.C. § 1104(a)(1)(D).  Thus, a fiduciary may not blindly follow plan documents or directives that

would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by plan documents to do so.

96.     The general duties of loyalty and prudence imposed by § 404 of ERISA are supplemented by a detailed list of transactions that are expressly prohibited by § 406 of ERISA, 29 U.S.C. § 1106, and are considered "*per se*" violations because they entail a high potential for abuse. Section 406(a)(1) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>
> (A)    sale or exchange, or leasing, of any property between the plan and a party in interest;
>
> * * *
>
> (C)    furnishing of goods, services, or facilities between the plan and a party in interest … .

Section 406(b) provides, in pertinent part, that:

> [A] fiduciary with respect to a plan shall not—
>
> (1)    deal with the assets of the plan in his own interest or for his own account,
>
> (2)    in his individual or in any other capacity act in a transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries …

97.     ERISA's prohibited transaction provisions thus prohibit fiduciaries, such as the Defendants here, from causing plans to engage in transactions with the plan sponsor, here BoA, including causing a plan to invest assets in investment management and other products offered by a party in interest or plan fiduciary and the payment of investment management and other fees in connection with such investments.

# VI. CLASS ALLEGATIONS

98.     Representative Plaintiffs bring this action on behalf of a two classes defined as:

Removal Class:  All participants in the Bank of America Pension Plan (and their beneficiaries) from August 7, 2000 through December 31, 2007 ("Removal Class Period"), and all participants in the Bank of America 401(k) Plan who, at any time during the Removal Class Period, were invested through the plan in any of the following five funds: Nations Large Cap Index Fund (now called the  Columbia Large Cap Index Fund), Nations MidCap Index Fund (now the Columbia MidCap Index Fund), the Nations Managed Small Cap Index Fund (now the Nations Small Cap Index Fund), the Nations International Equity Fund (now the Columbia Multi-Advisor International Equity Fund), and the Columbia Quality Plus Bond Fund (now the Columbia Core Bond Fund).  Excluded from the class are Defendants and Defendants' beneficiaries.

Selection Class:  All participants in the Bank of America 401(k) Plan who, at any time during the Selection Class Period (July 1, 2000 through December 31, 2007), were invested through the plan in any of the following ten funds: the Nations Value Fund (now called the Columbia Large Cap Value Fund), the Nations Bond Fund, the Nations Marsico Focused Equities Fund (now the Columbia Marsico Focused Equities Fund), the Nations LifeGoal Income and Growth Portfolio (now the Columbia LifeGoal Income and Growth Portfolio), the Nations LifeGoal Balanced Growth Portfolio (now the Columbia LifeGoal Balanced Growth Portfolio), and the Nations LifeGoal Growth Portfolio (now the Columbia LifeGoal Growth Portfolio), Nations Large Cap Index Fund (now the  Columbia Large Cap Index Fund), Nations MidCap Index Fund (now the Columbia MidCap Index Fund), the Nations Managed Small Cap Index Fund (now the Nations Small Cap Index Fund), and the Nations International Equity Fund (now the Columbia Multi-Advisor International Equity Fund).  Excluded from the class are Defendants and Defendants' beneficiaries.

99.     All claims except Counts IV, VI, and VII are brought on behalf of the Removal Class.  The remaining three counts are brought on behalf of the Selection Class.

100.     Class certification is appropriate under Fed.R.Civ.P. 23(a) and (b)(1), (b)(2), and/or (b)(3).

101.     The classes satisfy the numerosity requirement because they are composed of thousands of persons, in numerous locations.  The Pension Plan and the 401(k) Plan have, respectively, approximately 208,000 and 174,000 participants.  The number of class members is so large that joinder of all its members is impracticable.

102.     Common questions of law and fact for the Removal Class include:

A.     Whether Committee Defendants caused the Plans to invest assets of the Plans in mutual funds and other investment products offered or managed by BoA Subsidiaries and Affiliates;

B.     Whether Committee Defendants were fiduciaries responsible for selecting and evaluating the investments of the Plans;

D.     Whether Committee Defendants breached their fiduciary duties to the Plans and engaged in prohibited transactions by causing the Plans to invest the Plans' assets in mutual funds offered or managed by BoA Subsidiaries and Affiliates that had high fees and poor performance; and

E.     Whether the Plans and participants suffered losses as a result of the Committee Defendants' fiduciary breaches.

103.     Common questions of law and fact for the Selection Class include:

A.     Whether Committee Defendants made the initial selection of the ten funds listed in the Selection Class definition for the 401(k) Plan;

B.     Whether Committee Defendants were fiduciaries responsible for selecting and evaluating the investments of the Plans;

D.     Whether Committee Defendants breached their fiduciary duties to the Plans by selecting for the 401(k) Plan mutual funds offered or managed by BoA subsidiaries and affiliates simply because they would provide additional fee income to those subsidiaries and affiliates; and

E.     Whether the Plans and participants suffered losses as a result of the Committee Defendants' fiduciary breaches.

104.     Plaintiffs' claims are typical of the claims of each Class.  They have no interests that are antagonistic to the claims of each Class.  They understand that this matter cannot be settled without the Court's approval.  Plaintiffs are not aware of another suit pending against Defendants arising from the same circumstances.

105.     Plaintiffs will fairly and adequately protect the interests of each Class.  Plaintiffs are committed to the vigorous representation of each Class.  Plaintiff's counsel, McTigue & Veis, LLP and Bailey & Glasser LLP, are experienced in class action and ERISA litigation.  Counsel have agreed to advance the costs of the litigation contingent upon the outcome.  Counsel are aware that no fee can be awarded without the Court's approval.

106.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Joinder of all members of each class is impracticable.  The losses suffered by some of the individual members of each Class may be small, and it would therefore be impracticable for individual members to bear the expense and burden of individual litigation to enforce their rights.  Moreover, the Committee Defendants, as fiduciaries of the Plans, were obligated to treat all Class members similarly as Plan participants under written plan documents and ERISA, which impose uniform standards of conduct on fiduciaries.  Individual proceedings, therefore, would pose the risk of inconsistent adjudications.  Plaintiffs are unaware of any difficulty in the management of this action as a class action.

107.     This action may be certified as a class action under Rule 23(b).

A.     23(b)(1).  As an ERISA breach of fiduciary duty action, this action is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (A) inconsistent or varying adjudications with respect to individual members of each Class that would establish incompatible standards of conduct

for the defendants opposing each Class, or (B) adjudications with respect to individual members of each Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

      B.     23(b)(2).  This action is suitable as a class action under 23(b)(2)  because the Defendants have acted or refused to act on grounds generally applicable to each Class as a whole, thereby making appropriate final injunctive, declaratory or other appropriate equitable relief with respect to each Class.

      C.     23(b)(3).  This action is suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of each Class predominate over individual questions, and this class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiffs are aware of no difficulties likely to be encountered in the management of this matter as a class action.

## VII. CLAIMS FOR RELIEF

### COUNT I

**Engaging in Prohibited Transactions by Causing the Plans to
Invest in BoA Affiliated Funds
(Violation of § 406 of ERISA, 29 U.S.C. § 1106 by Committee Defendants; brought on
behalf of the Removal Class only)**

108.    All previous averments are incorporated herein.

109.    At all relevant times, the Committee Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the Plans and the Plans' assets.

110.    The Committee Defendants, by their actions and omissions, throughout the Removal Class Period, in causing the Plans to be invested in the Affiliated Funds, and causing the Plans to pay, directly or indirectly, investment management and other fees in connection therewith, caused the Plans to engage in transactions that Defendants knew or should have known constituted sales or exchanges of property between the Plans and parties in interest, the furnishing of services by parties in interest to the Plans, and transactions with fiduciaries in violation of §§ 406(a)(1)(A), (C), and 406(b), 29 U.S.C. §§ 1106(a)(1)(A), (C), and 406(b).

111.    The Committee Defendants caused these transactions to occur by failing to remove or replace the Affiliated Funds as Plan investment vehicles at each of the Committee meetings that occurred periodically during each year of the Removal Class Period. By failing to remove the Affiliated Funds at each of these meetings, the Committee Defendants were a proximate cause, in the case of the 401(k) Plan, of the investment, subsequent to each of these meetings, of millions of additional Plan dollars in the Affiliated Funds when participants' periodic contributions, and BoA's company match, were invested in 401(k) Plan investment options.

112.    As a direct and proximate result of these prohibited transaction violations, the Plans, directly or indirectly, paid millions of dollars in investment management and other fees that were prohibited by ERISA and suffered millions of dollars in losses annually.

113.    The Committee Defendants' actions and omissions in this respect are not excused by the affirmative defense provided by U.S. Department of Labor's Prohibited Transaction Exemption 77-3, 42 Fed. Reg. 18734 (Apr. 8, 1977). While that exemption permits a plan to acquire or sell shares offered by proprietary mutual funds, it only permits such exchanges under certain conditions. One of those conditions was not met in this case during the Class Period: the

requirement that all dealings between the plan and the proprietary funds are on a basis no less favorable than dealings between the funds and other investors. As described above, during the Class Period, investors other than the 401(k) Plan were given preferential treatment.

114. Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), Committee Defendants are liable to restore all losses suffered by the Plans as a result of the prohibited transactions and all profits earned on the fees paid by the Plans to BoA and its Subsidiaries and Affiliates.

## COUNT II

**Breach of Duties of Loyalty and Prudence by Failing to Remove or Replace the BoA Affiliated Funds as 401(k) Plan Investment Vehicles during the Removal Class Period, which Caused Losses to the 401(k) Plan**
**(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants; brought on behalf of the Removal Class only)**

115. All previous averments are incorporated herein.

116. At all relevant times, the Committee Defendants acted as fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C.§ 1002(21)(A), by exercising authority and control with respect to the management of the Plans and the Plans' assets.

117. Committee Defendants, by their actions and omissions in repeatedly failing to remove or replace the Affiliated Funds, which offered poor performance and high fees, as investment options and investments in the Plans during the Removal Class Period breached their duties of prudence and loyalty to the Plans under ERISA § 404(a)(1)(A), (B), 29 U.S.C. §§ 1104(a)(1)(A), (B). The fact that the Plans' investments in fee-generating managed funds were concentrated in funds managed by BoA Subsidiaries and Affiliates reflects a failure to consider and obtain less expensive and better performing, alternative, unaffiliated funds and services at the expense and to the detriment of the Plans and to the benefit of BoA Subsidiaries and Affiliates.

118.     Committee Defendants committed these breaches during each of the Committee meetings that occurred periodically during each year of the Removal Class Period.  At each of these meetings, the Committee Defendants had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so.

119.     As a direct and proximate result of these breaches of duty, the Plans, and indirectly Plaintiff and the Plans' other participants and beneficiaries, realized losses.

120.     Pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), The Committee Defendants are liable to restore all losses suffered by the Plans caused by the Committee Defendants' breaches of fiduciary duty.

## COUNT III

**BoA Violated ERISA by Knowingly Participating in Breaches of
Fiduciary Duty and Prohibited Transactions.
(§ 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); brought on behalf of
the Removal Class only)**

121.     All previous averments are incorporated herein.

122.     At all relevant times, BoA was a party in interest to the 401(k) Plan.  BoA also created and staffed the Committee.

123.     BoA, by its actions in participating in and abetting fiduciary breaches and prohibited transactions, caused the 401(k) Plan to invest in the Affiliated Funds, and to pay investment management and other fees in connection therewith, to BoA subsidiaries and affiliates.  A party in interest is subject to liability under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

124.     As a direct and proximate result of BoA's violations of ERISA, the 401(k) Plan, and indirectly Plaintiffs and the 401(k) Plan's other participants and beneficiaries, lost millions of dollars to BoA's fees and inferior returns.

125.     Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), BoA is liable to disgorge all revenues received from the Plans and BoA's earnings thereon.

## COUNT IV

**Breach of Duties of Loyalty and Prudence by Selecting
the Selection Class Funds as Investment Vehicles for the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants; brought on
behalf of the Selection Class only)**

126.     All previous averments are incorporated herein.

127.     As discussed above, the Committee Defendants engaged in fraud or concealment with respect to the claims alleged in this Count IV.

128.     Committee Defendants acted to add the ten Selection Class Funds as investment options in the 401(k) Plan on or about the following dates:  Nations MidCap Index Fund, December 1999; all other Selection Class Funds, June 15, 1999.

129.     In choosing to add the Nations MidCap Index Fund and the Nations Large Cap Index Fund, Committee Defendants replaced similar investment funds, with the identical investment strategy, that were already in the Plan.  The funds being replaced, however, were not mutual funds but collective trusts, which had much lower fees and offered superior performance.  Hence, by choosing these new funds for the 401(k) Plan, Committee Defendants increased the amount of fees BofA affiliates would receive from the 401(k) Plan and its participants.

130.     The Committee Defendants were required to prudently and loyally select funds for the 401(k) Plan.

131.     By selecting the Selection Class funds for the 401(k) Plan, Committee Defendants breached their duties of prudence and loyalty.  Some of these funds offered poor performance and high fees.  The Committee Defendants nevertheless selected all these funds simply because

they were managed and offered by BoA affiliates, and selecting them would bring millions of dollars in additional revenue to BoA affiliates.

132.    Committee Defendants breaches in selecting these funds caused millions of dollars in losses to the 401(k) Plan.

## COUNT V

**Breach of Duties of Loyalty and Prudence by Selecting
the Columbia Quality Plus Bond Fund as an Investment Vehicle for the 401(k) Plan
(Violation of § 404 of ERISA, 29 U.S.C. § 1104 by Committee Defendants and Defendant
BoA; brought on behalf of the Removal Class only)**

133.    All previous averments are incorporated herein.

134.    The Columbia Quality Plus Bond Fund ("Columbia Bond Fund") was added as an investment option in the 401(k) Plan effective December 17, 2004.

135.    When the Columbia Bond Fund was added to the 401(k) Plan, Plan investments in the Nations Bond Fund, which it replaced, were automatically "migrated" into the Columbia Bond Fund.

136.    Both the Columbia Bond Fund and the Nations Bond Fund are proprietary funds of BoA, managed and offered by BoA subsidiaries and affiliates.

137.    The Committee Defendants were required to prudently and loyally select funds for the 401(k) Plan.

138.    REDACTED

139.    By their actions and omissions in causing the Columbia Bond Fund to be added as an option in the 401(k) Plan, Committee Defendants and BoA breached their duties of prudence and loyalty.

140.    The Committee Defendants breached their fiduciary duties with respect to selection of this fund because they gave absolutely no consideration as to whether it was a prudent or appropriate choice for the 401(k) Plan. REDACTED

███████████████████████████████████████████████████████████████

███████████████████████████████████

141.    BoA breached its duties by selecting a fund for the 401(k) Plan because of its affiliation with BofA, and despite its poor performance and high fees.

142.    The Columbia Bond Fund offered poor performance and high fees.  The Committee Defendants nevertheless acquiesced in its selection because it was managed and offered by BoA affiliates, and selecting it would bring millions of dollars in additional revenue to BoA affiliates.

143.    Committee Defendants breaches in the selection of the Columbia Bond Fund caused millions of dollars in losses to the 401(k) Plan.

## COUNT VI

**Liability for Breach of Co-fiduciary
(Violation of § 405 of ERISA, 29 U.S.C. § 1105 by BoA;
brought on behalf of the Selection Class only)**

144.    All previous averments are incorporated herein.

145.    BoA violated ERISA, 29 U.S.C. §1105(a)(1), by knowingly undertaking to conceal the Committee Defendants' fiduciary breach in the initial selection of the Selection Class Funds.  It did so through the actions and omissions of its employees and agents, including BoA in-house benefits attorney Arthur Colas, Jr., by concealing and failing to provide complete and accurate information to participants who inquired regarding the events surrounding Committee Defendants initial selection of the Selection Class Funds.

146.     BoA violated ERISA, 29 U.S.C. §1105(a)(3), because it knew that the Committee Defendants had breached their fiduciary duties of prudence and loyalty and initial selection of the Selection Class Funds, but failed to take reasonable steps under the circumstances to remedy the breach, such as replacing the members of the Committee.

147.     On account of BoA's violations of these provisions, BoA is liable for the breach of its co-fiduciary, Committee Defendants, in the initial selection of the Selection Class Funds. That breach caused millions of dollars in losses to the 401(k) Plan.

## COUNT VII

**Breach of Duty of Loyalty and Prudence by Providing Misleading and Inaccurate Information to Participants in the 401(k) Plan**
**(Violation of § 404 of ERISA, 29 U.S.C. § 1104, by BoA;**
**brought on behalf of the Selection Class only)**

148.     All previous averments are incorporated herein.

149.     When BoA responded to participant inquiries about the 401(k) Plan's investment alternatives, it had a duty to speak truthfully and accurately.

150.     As alleged above, BoA repeatedly misled Plan participants about Committee Defendants' conduct in the initial selection of 401(k) Plan investment options.

151.     BoA developed a series of talking points or questions and answers to use in responding to participant inquiries about the 401(k) Plan's investment options at or around the inception of the 401(k) Plan on July 1, 2000. On information and belief, these materials remained in use for several months after July 1, 2000. REDACTED

152.    BoA also, from 2000-2001, caused several misleading letters to be sent directly to participants in the Plan who raised concerns about the Plan's investment in the Selection Class Funds. These communications repeatedly stated that there was nothing wrong with the Plan investing in BoA-affiliated funds, that regulations expressly permitted the investments, that the Committee had selected the funds, and that the funds had competitive fees and attractive risk/return features. These communications concealed the fact that REDACTED

153.    As alleged more fully above, REDACTED

154.    Although a fiduciary is not compelled to communicate with plan participants on all aspects of plan administration and operation, when the fiduciary elects to speak it must speak truthfully, accurately, and fully disclose all material information.

155.    The communications described above were not true, accurate, or complete. The communications omitted critical information about the failure of the Committee Defendants to conduct a diligent and prudent evaluation of the 401(k) Plan's investments. The communications described above told participants that the investments complied with legal requirements, when, in fact, BoA knew of the Committee Defendants' actions and omissions.

156.    BoA's breaches in providing misleading and inaccurate information to 401(k) Plan participants caused losses to the 401(k) Plan.

# VIII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.      Declare that the Committee Defendants, and each of them, have violated ERISA's prohibited transactions provisions;

2.      Declare that the Committee Defendants, BoA, and each of them, breached their fiduciary duties under ERISA;

3.      Issue an order compelling an accounting of the Plans' fees and expenses;

4.      Issue an order compelling Defendants to restore all losses caused to the 401(k) Plan from the poor performance of the Affiliated Fund;

5.      Issue an order compelling Defendants to restore all losses caused to the 401(k) Plan from the selection of the Selection Class Funds.

6.      Issue an order compelling the Defendants to disgorge all fees paid and incurred, directly or indirectly, to BoA Subsidiaries and Affiliates by the Plans, including disgorgement of profits thereon;

7.      Order equitable restitution and other appropriate equitable monetary relief against the Defendants;

8.      Award such other equitable or remedial relief as may be appropriate, including the permanent removal of the Defendants from any positions of trust with respect to the Plans, the appointment of independent fiduciaries to administer the Plans, rescission of the Plans' investments in the Affiliated Funds and the Selection Class Funds, and enjoining Defendants from causing the Plans to invest in the Affiliated Funds or the Selection Class Funds;

9.      That this action be certified as a class action and that each Class be designated to receive the amounts restored to the Plans by Defendants and a constructive trust be established for distribution to the extent required by law;

10.     Enjoin Defendants collectively, and each of them individually, from any further violations of their ERISA fiduciary responsibilities, obligations, and duties;

11.     Award Plaintiffs their attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g) and/or the Common Fund doctrine; and

12.     Award such other and further relief as the Court deems equitable and just.


November 19, 2010                          Respectfully Submitted,



                                           By /s/James A. Moore

                                           J. Brian McTigue (*Pro hac vice*)
                                           Bryan T. Veis (*Pro hac vice*)
                                           James A. Moore (*Pro hac vice*)
                                           **MCTIGUE & VEIS LLP**
                                           4530 Wisconsin Avenue, NW
                                           Suite 300
                                           Washington, DC  20016
                                           Tel:  (202) 364-6900
                                           Fax: (202) 364-9960
                                           bmctigue@mctiguelaw.com
                                           bveis@mctiguelaw.com
                                           jmoore@mctiguelaw.com

                                           Gregory Yann Porter (*Pro hac vice*)
                                           **BAILEY & GLASSER LLP**
                                           910 17th Street, NW
                                           Suite 800
                                           Washington, DC 20006
                                           Tel: (202) 543-0226
                                           Fax:  (202) 434-8252
                                           GPorter@baileyglasser.com

Robert M. Elliot (Bar#7709)
**ELLIOT PISHKO MORGAN P.A.**
426 Old Salem Road
Winston-Salem, North Carolina 27101
Tel: (336) 724-2828
Fax: (336) 724-3335
rmelliot@epmlaw.com

*Attorneys for Plaintiffs Elena M.*
*David, Arleen J. Stach, and Victor M.*
*Hernandez*

# CERTIFICATE OF SERVICE

I, David Bond, hereby certify that on the date set forth below a copy of the foregoing **Plaintiffs' Third Amended Class Action Complaint** was electronically filed with the Court and served via the Court's CM/ECF notification system upon the following:

Irving M. Brenner
Helms, Mulliss & Wicker, PLLC
201 North Tryon St.
Charlotte, NC 28202
704-343-2075
Fax: 704-343-2300
Email: irving.brenner@hmw.com

Arthur W.S. Duff
Carmen Ramirez
O'Melveny & Myers LLP
1625 Eye St., NW
Washington, DC 20006-4001
202-383-5300
Fax: 202-383-5414
sduff@omm.com
cramirez@omm.com

Gary S. Tell
Robert N. Eccles
O'Melveny & Myers LLP
1625 Eye St. NW
Washington, DC 20006
202-383-5300
Fax: 202-383-5414
gtell@omm.com
beccles@omm.com

Robert M. Elliot
Elliot Pishko Morgan, P.A.
426 Old Salem Road
Winston-Salem, NC 27101
336-724-2828
Fax: 336-714-4499
Email: rmelliot@epmlaw.com

Shannon Barrett
Christopher D. Catalano
O'Melveny & Myers LLP
1625 Eye St, NW
Washington, DC 20006-4001
202-383-5300
Fax: 202-383-5414
sbarrett@omm.com
ccatalano@omm.com

Matthew David Powers
O'Melveny & Myers LLP
275 Battery St., Ste. 2600
San Francisco, CA 94111
415-984-8700
mpowers@omm.com

William Bertain
1310 Sixth St.
Eureka, CA 95501

Dated: November 19, 2010

David T. Bond
McTigue & Veis LLP