**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ELENA M. DAVID; ARLEEN J.
STACH; VICTOR M. HERNANDEZ,

   *Plaintiffs-Appellants,*

   v.

J. STEELE ALPHIN; AMY WOODS
BRINKLEY; EDWARD J. BROWN, III;
CHARLES J. COOLEY; RICHARD M.
DEMARTINI; BARBARA J. DESOER;
JAMES H. HANCE, JR.; LIAM E.
MCGEE; EUGENE M. MCQUADE;
ALVARO G. DE MOLINA; MICHAEL
E. O'NEILL; OWEN G. SHELL, JR.;
R. EUGENE TAYLOR; F. WILLIAM
VANDIVER, JR.; BRADFORD H.
WARNER; KENNETH D. LEWIS;
BANK OF AMERICA CORPORATION;
BANK OF AMERICA CORPORATION
CORPORATE BENEFITS COMMITTEE; J.
TIM ARNOULT; CATHERINE P.
BESSANT; TIMOTHY MAYAPOULOUS;
BRIAN T. MOYNIHAN,

   *Defendants-Appellees,*

   and

No. 11-2181

2                           DAVID v. ALPHIN

WILLIAM BARNET, III; WALTER E.
MASSEY; JOHN T. COLLINS; GARY L.
COUNTRYMAN; PAUL FULTON;
CHARLES K. GIFFORD; THOMAS J.
MAY; PATRICIA E. MITCHELL;
EDWARD L. ROMERO; THOMAS M.
RYAN; O. TEMPLE SLOAN, JR.;
MEREDITH R. SPANGLER; ROBERT L.
TILLMAN; JACKIE M. WARD;
BANK OF AMERICA CORPORATION
BOARD OF DIRECTORS; FRANK P.
BRAMBLE, SR.; TOMMY R. FRANKS,

                              *Defendants.*

AARP; PENSION BENEFIT GUARANTY
CORPORATION; HILDA L. SOLIS,
Secretary of Labor,

          *Amici Supporting Appellants.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert J. Conrad, Jr., Chief District Judge;
Max O. Cogburn, Jr., District Judge.
(3:07-cv-00011-MOC)

Argued: September 18, 2012

Decided: January 14, 2013

Before NIEMEYER, SHEDD, and DAVIS, Circuit Judges.

Affirmed by published opinion. Judge Davis wrote the opinion, in which Judge Niemeyer and Judge Shedd joined.

## COUNSEL

**ARGUED:** Gregory Y. Porter, BAILEY & GLASSER LLP, Washington, D.C., for Appellants. Robert Leonard Furst, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Supporting Appellants. Shannon Barrett, O'MELVENY & MYERS, LLP, Washington, D.C., for Appellees. **ON BRIEF:** James A. Moore, MCTIGUE & VEIS LLP, Washington, D.C.; Benjamin L. Bailey, Sherrie A. Armstrong, BAILEY & GLASSER LLP, Washington, D.C., for Appellants. Deanna M. Rice, O'MELVENY & MYERS, LLP, Washington, D.C., for Appellees. Mary Ellen Signorille, Jay E. Sushelsky, AARP FOUNDATION LITIGATION, Melvin R. Radowitz, AARP, Washington, D.C., for Amicus Curiae AARP. Israel Goldowitz, Chief Counsel, Charles L. Finke, Deputy Chief Counsel, Paula J. Connelly, Assistant Chief Counsel, PENSION BENEFIT GUARANTY CORPORATION, Washington, D.C., for Amicus Curiae Pension Benefit Guaranty Corporation. M. Patricia Smith, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Plan Benefits Security, Nathaniel I. Spiller, Counsel for Appellate and Special Litigation, Stephen A. Silverman, Trial Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae Secretary of Labor.

---

## OPINION

DAVIS, Circuit Judge:

Appellants, Elena M. David, Arleen J. Stach, and Victor Hernandez, are the named representatives of a putative class of participants in two retirement plans sponsored by the Bank of America Corporation ("BOA" or "the Bank"). They brought this civil enforcement action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, alleging that Appellees, the Bank and

individual members of the Bank's Corporate Benefits Committee, engaged in prohibited transactions and breached their fiduciary duties by selecting and maintaining Bank-affiliated mutual funds in the investment menu for the Bank's 401(k) Plan and the Bank's separate but related Pension Plan (collectively "the Plans"). The district court dismissed all claims related to the Pension Plan for lack of Article III standing. Thereafter, upon the completion of extensive discovery, the court granted summary judgment in favor of Appellees on all remaining counts as time-barred. Declining to permit the filing of a Fourth Amended Complaint, the district court ultimately dismissed the action with prejudice. This timely appeal followed. For the reasons set forth within, we affirm.[1]

## I.

### A.

The Plans are two ERISA-governed retirement plans sponsored by BOA: the 401(k) Plan and the Pension Plan. Appellants are participants in the Plans. Appellees include the Bank, which acts as sponsor of the Plans, and the individual members of the Bank's Corporate Benefits Committee ("CBC"), who act as fiduciaries of the Plans. The CBC has authority to make decisions with respect to adding, monitoring, removing, or replacing investment options in the Plans.

The Pension Plan is a "defined benefit plan" and the 401(k) Plan is a "defined contribution plan."[2] A participant's benefits

---

[1] We have received and considered amicus briefs from the Pension Benefit Guaranty Corporation (PBGC), the American Association of Retired Persons (AARP), and the Secretary of Labor (SOL), in support of Appellants.

[2] "As [the] name[ ] impl[ies], a 'defined contribution plan' or 'individual account plan' promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A 'defined benefit plan,' by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation." *LaRue v. DeWolff, Boberg & Assoc., Inc.*, 552 U.S. 248, 250 n.1 (2008).

under the Pension Plan are based on a "combination of 'compensation credits' (a percentage of the participant's compensation that increases with age and length of service) and 'investment credits' (the hypothetical investment return that would be realized if the participant's compensation credits were invested in certain 'investment measures')." Appellees' Br. at 10. Upon retirement, a participant is entitled at minimum to the full value of her compensation credits, regardless of the performance of the investment measures that the participant selects. BOA, as Plan sponsor, is responsible for making up any shortfall between the returns on the Plan's investments and the amount necessary to fund benefits owed to participants. Any surplus beyond the amount needed to pay benefits reverts to the Plan. The parties agree that the Pension Plan was overfunded (i.e., the Plan's assets were more than sufficient to pay out all vested benefits) when Appellants filed this action.

In contrast, participants in the 401(k) Plan contribute a portion of their pre-tax earnings to the Plan, and those contributions are matched in part by the Bank's affiliates. Individual Plan participants choose how the Plan's assets are invested, but the CBC has authority to change the number of available investment options and to add or remove specific options from the investment lineup.

### B.

Appellants filed this action in the Northern District of California on August 7, 2006, and amended their complaint to include class allegations several months later. The case was transferred to the Western District of North Carolina in early 2007. Appellants filed their Second Amended Complaint ("SAC") by consent on July 31, 2007. Appellants alleged in the SAC that Appellees breached their fiduciary duties and engaged in prohibited transactions in violation of ERISA by selecting and retaining Bank-affiliated mutual funds as part of the investment mix for the Plans. They alleged that many bet-

ter options were available, and that most of the affiliated
mutual funds offered participants poor performance and high
fees. Appellants alleged that these violations caused multi-
million dollar losses to the Plans.

Appellees filed a motion to dismiss in part, which sought
dismissal of the Pension Plan claims in the SAC on the basis
that Appellants lacked Article III standing. Appellees also
sought dismissal of the CBC on the basis that the committee
is not a "person" subject to liability under ERISA § 3(9), 29
U.S.C. § 1002(9), but they did not contest the allegation that
the individual members of the CBC were properly before the
court. The motion to dismiss was referred to a magistrate
judge, who recommended that it be granted. The magistrate
judge also recommended that Appellees' motion to dismiss all
claims against the CBC be granted because, as a matter of
law, "committees are not properly subject to ERISA breach of
fiduciary duty claims." The district court, adopting the find-
ings in the magistrate judge's Memorandum and Recommen-
dation ("M&R"), concluded that Appellants lacked
constitutional standing to pursue the Pension Plan claims
because they failed to plead any cognizable injury-in-fact
likely to be redressed by a favorable outcome in this litiga-
tion. The district court also adopted the M&R with respect to
Appellees' motion to dismiss all claims against the CBC, not-
ing that Appellants did not object to the magistrate judge's
finding. After the district court dismissed Appellants' claims
related to the Pension Plan, Appellees answered the SAC.

On May 11, 2010, Appellees moved for summary judgment
on Appellants' 401(k) Plan claims, asserting that those claims
were time-barred. Soon after the completion of briefing on the
Appellees' motion for summary judgment, Appellants moved
for leave to file an amended complaint under Federal Rule of
Civil Procedure 15, arguing that such amendment would
allege "facts and legal theories sufficient to overcome [Appel-
lees'] statute of limitation argument." *David v. Alphin*, 817 F.
Supp. 2d 764, 767 (W.D.N.C. 2011) (internal citation omit-

ted). The district court granted Appellants' motion to amend and denied Appellees' motion for summary judgment. Appellants then filed their Third Amended Complaint ("TAC").

In the TAC, Appellants asserted numerous claims on behalf of the 401(k) Plan on the part of two classes: the "Removal Class" (consisting of 401(k) Plan participants who invested in certain mutual funds between August 7, 2000, and December 31, 2007) and the "Selection Class" (consisting of 401(k) Plan participants who invested in certain mutual funds between July 1, 2000 and December 31, 2007). Of the claims at issue on appeal, Appellants brought Counts I through III on behalf of the Removal Class only; they brought Count IV on behalf of the Selection Class only.[3]

Specifically, Appellants alleged in Count II that the members of the CBC breached their fiduciary duties of prudence and loyalty by failing to remove the Bank-affiliated mutual funds from the investment lineup. That is, they contend that Appellees effectively applied higher standards for removal of the Bank's proprietary funds than for removal of non-proprietary funds, and that the Removal Class Period funds performed poorly and had significantly higher fees than other viable options. Appellants alleged in Counts I and III that Appellees violated ERISA by causing the 401(k) Plan to engage in prohibited transactions; they assert that the discrete investment transactions that occurred as a result of Appellees' failure to remove the funds constituted transactions between the 401(k) Plan and the investment manager, which was a subsidiary of the Bank (and accordingly a party-in-interest). Finally, Appellants alleged in Count IV that the members of the CBC breached their duties of prudence and loyalty when they selected the Bank-affiliated funds for inclusion in the 401(k) Plan investment lineup.

---

[3]Appellants do not appeal the dismissal of Counts V through VII of the TAC.

Appellees answered the TAC and filed their second motion for summary judgment on limitations. In response to Appellees' motion, Appellants moved for relief under Fed. R. Civ. P. 56(f) on the basis that responsive facts were not then available to them and that discovery was necessary on the statute of limitations issue. Over objection by Appellees, who highlighted Appellants' earlier discovery opportunities, the district court allowed Appellants to take depositions and conduct other discovery to support their opposition to Appellees' second motion for summary judgment. The district court subsequently granted Appellees' second motion for summary judgment and ultimately entered a final judgment dismissing the action with prejudice. Appellants timely filed a notice of appeal.

## II.

"Under ERISA, plan fiduciaries 'are assigned a number of detailed duties and responsibilities, which include the proper management, administration and investment of plan assets, the maintenance of proper records, the disclosure of specific information, and the avoidance of conflicts of interest.'" *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 417 (4th Cir. 2007) (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993)). ERISA requires that a fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that a plan participant may bring a civil action against fiduciaries for breaches of their duties of loyalty and prudence as articulated in ERISA § 409(a). Appellants cannot bring suit under § 502(a)(2) to recover personal damages for misconduct, but rather must seek recovery on behalf of the plan. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 608 (6th Cir.

2007) (citing *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) for the proposition that "a participant's action brought pursuant to § 1132(a)(2) must seek remedies that provide a benefit to the plan as a whole"). In other words, Appellants may bring suit under § 502(a)(2) on behalf of the Pension Plan, but they are not permitted to recover individually; all relief must go to the Plan itself. *See id.*

III.

A.

Appellants argue that the district court committed reversible error in dismissing the Pension Plan claims alleged in the SAC for lack of Article III standing. We review legal questions regarding standing *de novo*. *See Piney Run Pres. Ass'n v. County Comm'rs of Carroll County, Md.*, 268 F.3d 255, 262 (4th Cir. 2001). Because the standing issues in this appeal arise from a motion to dismiss, we look primarily to the operative complaint, the SAC, for the relevant facts. *See Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011). When standing is challenged on the pleadings, we accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (internal citation and quotation marks omitted). We do not, however, take account of allegations in the complaint labeled as fact but that constitute nothing more than "legal conclusions" or "naked assertions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

It is undisputed that Appellants have statutory standing to assert claims against Appellees on behalf of the Pension Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). However, appellants asserting ERISA claims must also have constitutional standing under Article III, U.S. Const. art. III, § 2. *See In re Mutual Funds Inv. Litig.*, 529 F.3d 207, 216 (4th Cir. 2008); *Wilmington Shipping Co. v. New England Life Ins.*

*Co.*, 496 F.3d 326, 333-34 (4th Cir. 2007). As the party invoking federal jurisdiction, Appellants bear the burden of establishing standing. *Wilmington Shipping*, 496 F.3d at 334. The "irreducible minimum requirements" of Article III standing are:

> (1) an injury in fact (i.e., a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (i.e., a 'fairly . . . trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is 'likely' and not merely 'speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Comm'ns Co. L.P. v. APCC Serv., Inc.*, 554 U.S. 269, 273-74 (2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). The core question here is whether participants have suffered an injury that supports Article III standing to bring ERISA claims on behalf of a defined benefit pension plan where the plan is overfunded when the claims are filed and any surplus funding will revert to the plan.

The magistrate judge's initial review of Appellees' motion to dismiss relied heavily upon *Glanton v. AdvancePCS, Inc.*, 465 F.3d 1123 (9th Cir. 2006), in which the Ninth Circuit held that pension plan participants lacked standing to pursue claims under ERISA § 502(a)(2) where the relief sought on behalf of the plan would not benefit the participants individually. *Id.* at 1125. Applying *Glanton*, the magistrate judge reasoned that Appellants "neither allege that they have been denied benefits, nor that their receipt of future benefits [ ] is in jeopardy." J.A. 633.[4] Thus, the judge concluded that "[Ap-

---

[4] The magistrate judge further reasoned that, with respect to a defined benefit plan, "the sum total entitlement of any [participant] is the full value of the accrued benefits as determined under the Pension Plan's terms — and nothing more — regardless of the performance of the Pension Plan's investments or the Pension Plan's payment of any investment related fees." J.A. 634.

pellants] have not suffered any injury that is likely to be redressed by a favorable outcome in this litigation," and accordingly "lack Article III or constitutional standing to assert claims as to the Pension Plan." J.A. 635-36. The district court adopted the M&R over Appellants' objection and dismissed Counts I and II of the SAC, holding that because the plan is a defined benefit plan, "the purportedly improper and excessive fees did not harm [Appellants'] interests in or benefits under the Pension Plan," and "any recovery by the [Appellants] would have absolutely no effect on the [Appellants'] entitlement to benefits." J.A. 645.

Appellants contend on appeal that they have suffered "four distinct injuries, any of which confers constitutional standing." Appellants' Br. at 17. First, they contend that they have representational standing to sue on behalf of the Pension Plan because ERISA expressly authorizes participants to pursue redress for injuries to the Plan itself. *Id.* at 17, 65. Second, Appellants assert that trust law and ERISA provide standing to sue self-dealing fiduciaries without proof of economic harm. *Id.* Third, Appellants maintain that they suffered personal economic injuries because Appellees' fiduciary breaches "diminished the Pension Plan's assets," thereby "increasing the risk that the Plan would fail and that [Appellants'] retirement benefits would not be paid as promised." *Id.* at 17. Finally, Appellants argue that they have standing to pursue their statutorily created rights, "separate and apart from any economic injury or representational standing." *Id.* at 18.

Appellees argue that Appellants have not suffered an Article III injury-in-fact because they are entitled to receive a set level of retirement benefits that is unaffected by the performance of the Plan's underlying investments and, in any event, Appellants could not demonstrate actual or imminent harm because the Plan was overfunded when they filed their claims. Appellees' Br. at 1. Secretary of Labor Hilda Solis ("Secretary Solis" or "the Secretary"), the Pension Benefit

Guaranty Corporation (the "PBGC"), and the AARP, acting as amici curiae, urge reversal of the district court's dismissal of Appellants' Pension Plan claims.

For the reasons that follow, we are constrained to affirm the district court's dismissal of Appellants' Pension Plan claims.

### 1.   Representational Standing

Appellants argue that under the Supreme Court's decision in *Sprint*, they have "the same kind of representational standing as a trustee, fiduciary, or assignee." Appellants' Br. at 66; *see also* SOL Amicus Br. at 15-17 (urging that Appellants have Article III standing under *Sprint*).

In *Sprint*, the Supreme Court considered "whether an assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor." 554 U.S. at 271 (2008). *Sprint* involved claims that had been contractually assigned "lock, stock, and barrel" by phone operators to aggregators for compensation allegedly owed to them by long-distance carriers. *Id.* at 268. The *Sprint* Court relied upon *Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765 (2000), for the proposition that "an assignee can sue based on his assignor's injuries." *Id.* at 286.

In *Vermont Agency*, the Supreme Court considered whether a *qui tam* relator has Article III standing to bring suit on behalf of the United States under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, which provides that a private party may bring suit to remedy an injury suffered by the United States, not the private party. *See* 529 U.S. at 771. Looking to the history of *qui tam* actions and the theoretical justification for relator standing, the Court held that a *qui tam* relator under the FCA has Article III standing. *Id.* at 777-78. The Court reasoned that an "adequate basis for the relator's

suit [ ] is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor. The FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Id.* at 773 (noting that "[a]lthough [the Court] ha[s] never expressly recognized 'representational standing' on the part of assignees, [it] ha[s] routinely entertained their suits . . . and also suits by subrogees, who have been described as 'equitable assignees.'") (internal citations omitted).

The *Sprint* Court, like the *Vermont Agency* Court, conducted an extensive review of history and precedent, noting that

> Courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts — both before and after the founding — have always permitted the party with legal title alone to bring suit; and that there is a strong tradition specifically of suits by assignees for collection.

*Sprint*, 554 U.S. at 285.

Appellants rely upon *Sprint* for the proposition that "Article III allows a plaintiff to sue for injury to another even if the plaintiff personally has no stake in the outcome of the case, provided (1) there has been an injury to another; (2) the relief sought will remedy that injury; and (3) the plaintiff has the legal authority to bring the claim on behalf of the injured other." Appellant's Br. at 66 (citing *Sprint*, 554 U.S. at 274-75).

Of the three amici, only Secretary Solis addresses representational standing and *Sprint*. *See* SOL Amicus Br. at 15-17. The Secretary argues that, "[u]nder *Sprint*, ERISA section 502(a)(2) appropriately assigns a plan's action to participants whose legal victory 'would unquestionably redress the *injuries* [to the plan] for which [they] bring suit' regardless of

how the plan's recovery is ultimately allocated, and thus provides them with the requisite constitutional standing." *Id.* at 16 (quoting *Sprint*, 554 U.S. at 286-87 (citing *Vermont Agency*, 529 U.S. at 773 (emphasis in original))).

The district court found that *Sprint* "has no relevance to [Appellants'] claims on behalf of the Pension Plan" because "[t]he [Appellants] in this case are not assignees standing on behalf of an assignor who has *contractually* assigned his rights." J.A. 644 (emphasis added).**⁵** Appellees maintain that *Sprint* does not extend to suits brought by pension plan participants under ERISA.

We conclude that the district court correctly perceived controlling distinctions between the circumstances present in *Sprint* and those present in this case. In *Sprint*, although the Supreme Court did not expressly limit its holding to contractual assignment of legal rights, it emphasized the long history of allowing contractual assignees to bring suit based on an assignor's injuries. Further, *Sprint* relied upon *Vermont Agency*, in which the Court recounted the long tradition of *qui tam* actions, and the theoretical justification for relator standing in finding that the FCA "'effect[s] a partial assignment of the Government's damages claim' and that assignment of the 'United States' injury in fact suffices to confer standing on [the relator].'" *Sprint*, 554 U.S. at 286 (quoting *Vermont Agency*, 529 U.S. at 773, 774). Appellants here do not assert the existence of any contractual agreement assigning the Plan's injuries and interests to them. Absent such an assignment, and any history of extending assignee/assignor theories of standing to the ERISA context, we find no basis upon which to expand the reasoning in *Sprint* to find that the Appellants have standing here.

---

**⁵**The Secretary further urges that the district court, in finding that *Sprint* is inapplicable merely because Appellants did not receive a contractual assignment of rights, engaged in an "unreasonably narrow" reading of the case and failed to recognize that this is a "distinction without a difference." SOL Amicus Br. at 15-17.

Moreover, we observe that in the assignee/assignor context at issue in *Sprint*, the interests of the assignee and assignor in pursuing a claim to recover damages are fully aligned. However, in the ERISA context, specifically in the case of a defined benefit plan where all plan participants are equally situated, extending the *Sprint* theory of standing would result in a subset of plan participants being able to cause the entire plan to incur the considerable costs of litigating an alleged fiduciary breach claim even when those alleged harms did not result in any cognizable injury to the plan. Such a suit would certainly be adverse to the interests of the plan. Where there is no actual injury, we see little to be gained from an abstract challenge to alleged fiduciary misconduct at the cost of the plan and those participants who did not bring (and may not approve of) the suit.

## 2.   Trust Law and ERISA

Appellants also assert that they have standing to sue on the Pension Plan claims because "[t]rust law has long-recognized that a beneficiary has standing to sue the trustee for breach of the duty of loyalty even if the beneficiary does not claim the trustee's breach caused pecuniary harm to the trust." Appellant's Br. at 69. They argue that trust law extends to this context because "ERISA embodies these [trust] principles." *Id.* at 70. However, Appellants provide no authority for the proposition that trust law principles extend to the ERISA context to confer Article III standing on Appellants to permit them to sue on behalf of a defined benefit pension plan where the plan is overfunded when the claims are filed and any surplus funding will revert to the plan only. We find no basis to hold that it does.

## 3.   Direct Injury

Appellants argue in the alternative that they were personally injured by Appellees' imprudent investment decisions. They contend that those investment decisions diminished Pen-

sion Plan assets and thereby increased the risk that the Plan
would fail and that their retirement benefits would be compro-
mised. Appellants' Br. at 72. Appellants assert that this injury
to their interest in the Pension Plan is sufficient for Article III
purposes, and that an actual reduction in their retirement ben-
efits is not required. *Id.* Appellees respond that "[a]bsent an
actual loss to defined benefit plan participants, as opposed to
the plan itself, participants simply suffer no Article III injury-
in-fact." Appellees' Br. at 25. The district court found that the
alleged violations did not harm Appellants' interests in or
benefits under the Pension Plan because "any risk to the bene-
fits promised by the defined benefit plan are born by the
employer, and 'members [of the defined benefit plan] have a
nonforfeitable right only to their "accrued benefit," so that a
plan's actual investment experience does not affect their statu-
tory entitlement.'" J.A. 644-45 (quoting *Hughes Aircraft Co.
v. Jacobson*, 525 U.S. 432, 440 (1999)).[6]

Secretary Solis, the PBGC, and the AARP, as amici curiae,
urge that the risk of underfunding in a defined benefit pension
plan, even where the plan is overfunded when the claims are
filed, is an Article III injury-in-fact. The Secretary explains
that losses like those that Appellants allege in this case "make
promised benefits less secure and reduce future participants'

---

[6]The district court agreed with the Eighth Circuit that:

> In a defined benefit plan, if plan assets are depleted but the
> remaining pool of assets is more than adequate to pay all accrued
> or accumulated benefits, then any loss is to plan surplus . . . .
> [P]laintiffs as plan beneficiaries have no claim or entitlement to
> its surplus. If the plan is overfunded, [the plan sponsor] may
> reduce or suspend its contributions. If the Plan's surplus disap-
> pears, it is [the employer's] obligation to make up any underfund-
> ing with additional contributions. If the Plan terminates with a
> surplus, the surplus may be distributed to [the plan sponsor].
> Thus, the reality is that a relatively modest loss to Plan surplus
> is a loss only to [the Plan's sponsor].

*Harley v. Minnesota Mining and Mfg. Co.*, 284 F.3d 901, 906 (8th Cir.
2002) (internal citations omitted).

protection against future losses or a plan sponsors' inability to pay." SOL Amicus Br. at 7. The Secretary further contends that "the district court's ruling is unworkable as a practical matter" because it "ties standing to the plan's funding level," which is highly volatile as a result of dependence on "various factors such as market conditions and interest rates." *Id.* at 9 ("[A] plan may, for instance, be overfunded at the time of the breach, underfunded when losses were incurred, overfunded at the initiation of litigation, and underfunded when benefit payments became due."). Thus, the Secretary concludes that "[t]he upshot of the district court's opinion is to immunize fiduciaries from lawsuits by plan participants in any case involving an overfunded defined benefit plan," leaving no remedy for clear ERISA violations in such cases. *Id.* at 10.

The PBGC[7] similarly contends that "participants' standing to sue for fiduciary breach in an ongoing defined benefit pension plan does not depend on proof of loss of benefits or the plan's funding status." PBGC Amicus Br. at 8; *see also id.* at 15 (emphasizing that "neither lost benefits nor current plan funding is relevant to whether participants are injured by a plan's loss from a fiduciary breach."). With regard to whether benefits due to participants in a defined benefit plan are compromised in the event that the Plan terminates in an underfunded state, the PBGC explains that "[w]hen an underfunded

---

[7]The PBGC is an agency charged with the statutory objective of "providing for the payment of benefits to participants of terminated plans." PBGC Amicus Br. at 3 (citing 29 U.S.C. § 1302(a)). "The corporation administers Title IV of ERISA, which includes a mandatory government insurance program that protects the pension benefits of private-sector American workers who participate in ERISA-covered pension plans." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 332 (4th Cir. 2007) (citing *Pension Benefit Guarantee Corp. v. LTV Corp.*, 496 U.S. 633, 637 (1990)). "In enacting Title IV, Congress sought to ensure that employees and their beneficiaries would not be completely deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plan." *Id.* (internal quotation marks omitted).

pension plan terminates, PBGC typically becomes statutory trustee, adds agency funds as necessary, and pays participants their benefits under the plan, up to the statutory limits." *Id.* at 3 (citing 29 U.S.C. §§ 1321, 1322, 1361). PBGC further states that "[t]he amount of statutory benefits that PBGC pays to participants can be greatly affected by the amount of plan assets," and that "[i]n determining statutory benefits, PBGC values the plan's assets, then distributes them to participants according to the provisions of the plan and the six-tier hierarchy in Title IV of ERISA, as implemented by PBGC's regulations." *Id.* at 4-5 (citing 29 U.S.C. § 1344(a), 29 C.F.R. pt. 4044). Thus, according to the PBGC, "any drain of assets from a defined benefit pension plan can affect participants, because if the plan ultimately terminates in an underfunded state, PBGC may not pay their full benefits." *Id.* at 8.

We find these risk-based theories of standing unpersuasive, not least because they rest on a highly speculative foundation lacking any discernible limiting principle. The Supreme Court has held that a participant in a defined benefit pension plan has an interest in his fixed future payments only, not the assets of the pension fund. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999). The Court has also opined that "[m]isconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit *unless it creates or enhances a risk of default by the entire plan*." *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 255 (2008) (emphasis added).

Whether an Article III injury-in-fact results from the possibility that (1) a pension plan will terminate in an underfunded state, *and* (2) PBGC will not pay full benefits is a question that has not been decided by the Supreme Court nor this Court; this case does not afford the opportunity for such a pronouncement. We find on this record the alleged risk to be insufficiently "concrete and particularized" to constitute an injury-in-fact for Article III standing purposes. If the Plan becomes underfunded, the Bank will be required to make

additional contributions. If the Bank is unable to do so because of insolvency, participants' vested benefits are guaranteed by the PBGC up to a statutory minimum. Thus, the risk that Appellants' pension benefits will at some point in the future be adversely affected as a result of the present alleged ERISA violations is too speculative to give rise to Article III standing. In addition, Appellants would not benefit from any additional surplus that may result from a favorable outcome in this litigation because the BOA Pension Plan expressly provides that any surplus reverts only to the Plan and is not distributed to participants.

### 4. Deprivation of Statutory Rights as Injury-in-Fact

Appellants contend, finally, that the deprivation of their statutory right to have the Pension Plan operated in accordance with ERISA's fiduciary requirements is sufficient to constitute an injury-in-fact for Article III standing. Appellants' Br. at 76; *see also* SOL Br. at 17. They assert that they "may sue to enforce legal rights vested in them by statute: the right to ensure that the Pension Plan is operated in accordance with law, that fiduciaries discharge their duties with care, skill, prudence, loyalty, and diligence, and that fiduciaries do not engage in self-dealing." Appellants' Br. at 76. However, this theory of Article III standing is a non-starter as it conflates statutory standing with constitutional standing. As noted *supra*, these requirements are distinct; we have subject matter jurisdiction over ERISA claims only where the appellants have both statutory *and* constitutional standing. *See In re Mut. Funds*, 529 F.3d at 216; *Wilmington Shipping*, 496 F.3d at 333-34.

Accordingly, the district court did not err in finding that the Appellants lack standing to sue on the Pension Plan claims. Appellants and amici caution that this finding will leave defined benefit plan participants without an ERISA remedy to fiduciary breaches whenever the plan is overfunded; but we note that in situations where plan participants lack standing,

the Secretary always remains empowered under the statute to investigate the continuing viability of ERISA plans and to bring suit to enforce ERISA. 29 U.S.C. §§ 1001 *et seq.*; *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 689-94 (7th Cir. 1986) (en banc).

### B.

We next turn to the issue of limitations. Appellants argue that the district court committed reversible error in dismissing Counts I through IV of the TAC on the ground of limitations. We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of Appellants, the nonmoving party. *Eckelberry v. Reliastar Life Ins. Co.*, 469 F.3d 340, 343 (4th Cir. 2006). Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving parties are entitled to judgment as a matter of law. As the party asserting the affirmative defense of statute of limitations, Appellees have the burden of proving facts showing that the limitations period had run prior to the filing of this action on August 7, 2006. *Columbia Venture, LLC v. Dewberry & Davis, LLC*, 604 F.3d 824, 829 (4th Cir. 2010).

Under ERISA § 413, a plaintiff is limited by a general six-year limitations period. 29 U.S.C. § 1113. The six-year limitations period is shortened to three years in instances where the plaintiff had actual knowledge of the breach. *Id.* Because § 413's limitations period begins immediately upon "the last action which constituted a part of the breach or violation," § 413 can most accurately be described as a statute of repose. Accordingly, the limitations period begins running "when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." 54 C.J.S. Limitations of Actions § 4, at 20-21 (1987); Black's Law Dictionary 1546 (9th ed. 2009).

For the reasons that follow, we affirm the district court's dismissal of Counts I through IV of the TAC.

1.   Counts I, II, and III

Appellants allege in Count I of the TAC that the CBC caused the 401(k) Plan to engage in prohibited transactions in violation of ERISA § 406, 29 U.S.C. § 1106, by including Bank-affiliated funds in the Plan's investment lineup. In Count III, Appellants allege that the Bank itself participated in and abetted those prohibited transactions.

Appellants argue that Appellees violated ERISA's prohibited transactions provisions by "failing to remove or replace the Affiliated Funds as Plan investment vehicles at each of the Committee meetings that occurred periodically during each year of the Removal Class Period," and the limitations period therefore began to run anew at each CBC meeting at which members failed to remove the funds. *See* Appellants' Br. at 29, 37. Appellees argue that the failure to remove funds constitutes a failure to act, which cannot form the basis for a claim under 29 U.S.C. § 1106. Appellees' Br. at 47-48. They contend that the only affirmative act alleged is the initial selection of the Bank-affiliated funds, which occurred more than six years before Appellants filed this action. *Id.* at 50.

Appellees argue in the alternative that Counts I, II, and III are also barred under the three-year limitations period in 29 U.S.C. § 1113(2) because Appellants had actual knowledge of the alleged violation more than three years before filing. *Id.* at 50-55, 69-70.

The district court construed Counts I, II, and III as challenging the initial selection of the Bank-affiliated funds, which undisputedly occurred no later than 1999, and accordingly held that the claims are time-barred under the 6-year limitations period in 29 U.S.C. § 1113(1)(A). *Alphin*, 817 F. Supp. 2d at 776-781.

We agree with the district court. Although Appellants argue that Claims I and III are based only upon an omission (i.e., the

failure to remove the Bank-affiliated funds from the 401(k) Plan investment lineup), the alleged prohibited transactions and breach could only be based on the initial selection of the funds.

Count I alleges that Appellees, by their actions and omissions, caused the Plans to engage in prohibited transactions under § 406(a)(1)(A), (C), and 406(b), of ERISA. Section 406(a)(1) provides:

> (a) Transactions between plan and party in interest
> Except as provided in section [408] of this title:
>
>> (1) A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect—
>>
>>> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
>>>
>>> —
>>>
>>> (C) furnishing of goods, services, or facilities between the plan and a party in interest;

29 U.S.C. § 1106(a)(1)(A), (C).

Section 406(b) provides:

> (b) Transactions between plan and fiduciary
> A fiduciary with respect to a plan shall not—
>
>> (1) deal with assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

To establish a claim under section 406(a), Appellants must "show that a fiduciary caused the plan to engage in the allegedly unlawful transaction." *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996). Courts have held that a decision to continue certain investments, or a defendant's failure to act, cannot constitute a "transaction" for purposes of section 406(a) or 406(b). *Wright v. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) ("The decision by the Oremet Defendants to *continue* to hold 15% of Plan assets in employer stock was not a 'transaction.'"); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1126 (C.D. Cal. 2009) ("SCE's alleged failure to act, however, cannot constitute a 'transaction' for the purposes of § 1106(a)(1)(D)."). We agree with this view. The common understanding of the word "transaction" implies that an affirmative action is required. (*See* Meriam Webster dictionary: "transaction: 1) a: something transacted; especially: an exchange or transfer of goods, services, or funds; . . . 2) a: an act, process, or instance of transacting.").

Accordingly, we find untenable Appellants' contention that their claims are timely because Appellees' failure to remove the affiliated funds at every committee meeting constituted a new "prohibited transaction," and thus, a breach of fiduciary duty. The only action that can support an alleged prohibited

transaction is the initial selection of the affiliated funds, which undisputedly occurred in 1999. Thus, the district court correctly determined that the limitations period ran prior to the filing of this action in 2006.

Appellants allege in Count II of the TAC that Appellees breached their fiduciary duties of prudence and loyalty by failing to remove or replace the BOA-affiliated funds as investment vehicles despite poor performance and higher fees in comparison to other available alternatives during the relevant time period. In considering Count II, the district court concluded that "[w]hile ERISA fiduciaries are in fact obliged to monitor funds contained in the Plan lineup for material changes, the court can find no continuing obligation to remove, revisit, or reconsider funds based on allegedly improper initial selection." *Alphin*, 817 F. Supp. 2d at 777.

Appellants assert that the district court erred in suggesting that Count II alleges an "improper monitoring" claim. Appellant's Br. at 36. They maintain that the allegation is solely one of a "violation of the well-settled duty to remove imprudent investments, not the duty to monitor." *Id.* Appellees argue that the district court properly found that there is no duty to remove funds absent a material change in circumstances.

As the district court held, Appellants have not claimed that the bank-affiliated funds *became* imprudent, based on fund performance or increased fees, during the limitations period. Rather, the TAC alleges that the affiliated funds "offered poor performance and high fees," and that at each Committee meeting during the Removal Class Period, Appellees "had cause to remove the Affiliated Funds based on their poor performance and high fees, but failed to do so." J.A. 3122 (TAC ¶¶ 117-18). The TAC makes clear that the challenge to the prudence of the funds which underlies Count II is based on attributes of the funds that existed at the time of their initial selection — their alleged poor performance and high fees relative to alternative available fund options. Thus, the claim is

not truly one of a failure to remove an imprudent investment. It is, at its core, simply another challenge to the initial selection of the funds to begin with. Again, as the initial selection of the Bank-affiliated funds undisputedly occurred in 1999, this claim is time-barred.

We affirm the district court's holding that Appellees' initial selection of the Bank-affiliated funds for inclusion in the 401(k) Plan investment lineup triggered the limitations clock in this case and accordingly affirm the district court's dismissal of Counts I, II and III. In so doing, we do not decide whether ERISA fiduciaries have an ongoing duty to remove imprudent investment options in the absence of a material change in circumstances, or whether Appellants had actual knowledge of the claims, as Appellees contend, thereby triggering the three-year limitations period in 29 U.S.C. § 1113(2).

2.  Count IV

In Count IV of the TAC, Appellants allege that Appellees breached their fiduciary duties under ERISA § 404, 29 U.S.C. § 1104, by selecting the Bank-affiliated funds for inclusion in the 401(k) Plan's investment lineup.[8] Appellants argue that Count IV did not accrue until August 7, 2000, the date when the Bank first made the challenged funds available as investment options to "many Plan participants." Appellants' Br. at 39-40. They argue that this conduct, which occurred exactly six years before Appellants filed this action on August 7, 2006, and therefore falls within the limitations period in 29

---

[8]Unlike Count II, discussed *supra*, Count IV expressly attacks Appellees' selection of the funds, rather than their failure to remove them from the lineup. Appellants initially pled their general breach of fiduciary duty claims as a single count in the SAC, but amended the complaint to split their fiduciary breach claim into two separate counts, one expressly attacking the selection of the funds (Count IV) and the other attacking Appellees' failure to remove the funds after they had been selected (Count II). J.A. 3121-23, 3125-26.

U.S.C. § 1113(1)(A), was the last action constituting the breach. *Id.* at 40 ("Offering [the] funds to participants constitute[d] the last act of the fiduciary breach in selecting them for the Plan.").

Appellees first argue that Appellants conceded below that any claims based upon the improper initial selection of the Bank-affiliated funds would be untimely "absent fraud or concealment." Appellees' Br. at 56-57 (citing J.A. 747). Appellees also contend that the Bank-affiliated funds were available as investment options prior to August 7, 2000, a date that is significant only because it is when the Bank-affiliated funds became available to a certain subset of participants who had been a part of the NationsBank Plan prior to its merger with the BOA Plan and were subject to an investment freeze between July 1, 2000, and August 7, 2000, but were able to choose the Bank-affiliated funds on August 7, 2000. *Id.* at 57-59.

Finally, Appellees argue that the last action which constituted a part of the breach or violation was the selection itself, "which undisputedly occurred no later than 1999." Appellees' Br. at 58 (citing J.A. 3123). They reason that "[a]ny later consequences of that decision were not part of the breach itself, but instead the *effects* of that alleged breach, and effects have no bearing on the accrual of [Appellants'] claims." *Id.* (emphasis in original) (citing *Librizzi v. Children's Mem'l Med. Ctr.*, 134 F.3d 1302, 1306 (7th Cir. 1998) ("An adverse decision whose effect is deferred gives rise to a claim when the decision is made, not when the effect is felt.")). Appellees further maintain that "[e]ven if the effects of the alleged breach were relevant for limitations purposes, those effects themselves occurred more than six years before [Appellants] filed suit" because "the 401(k) Plan *invested* in the Bank-affiliated funds — and thus began bearing the allegedly adverse consequences of the funds' selection — well before the August 7, 2000 date suggested by [Appellants]." Appellees' Br. at 58-59 (emphasis in original).

Appellees' arguments are persuasive. The parties agree that the initial selection of Bank-affiliated funds occurred in 1999, well before the August 7, 2000, date Appellants would have us treat as the accrual date of their claims for purposes of evaluating the timeliness of Count IV. In the TAC, Appellants expressly allege that Appellees breached their fiduciary duties of prudence and loyalty by *selecting* the funds. *See* J.A. 3123. They do not allege that additional violations occurred when particular participants were first able to invest in the funds. Thus, we reject Appellants' argument that Count IV did not accrue until August 7, 2000. The claim accrued in 1999 when any harm allegedly caused by the imprudent investments began.[9] Accordingly, the district court's dismissal of Count IV of the TAC as untimely under 29 U.S.C. § 1113(1)(A) was not erroneous.

## C.

Finally, Appellants argue that the district court abused its discretion in dismissing the TAC in its entirety with prejudice, rather than permitting Appellants to amend the complaint. Appellants' Br. at 62. Appellants assert that the district court incorrectly stated that it had "allowed [appellants] three opportunities to amend their Complaint to address the issues raised by [appellees]," when in fact the first amendment was of right, the second was by consent, and only the third required the court's approval. *Id.* (citing J.A. 2977). However true these contentions may be, they fail to address the real substance of the district court's highly salient observation about the futility of any proposed amendment.

---

[9]The district court did not address this argument in its opinion granting summary judgment in favor of Appellees on Count IV because the thrust of Appellants' argument in opposition to the motion below was that the limitations clock had not run, due to fraud and concealment. *See* J.A. 3000-03. The district court rejected Appellants' fraud and concealment argument, and Appellants do not challenge this aspect of the district court's order on appeal.

We have held that while "[t]he grant or denial of an opportunity to amend is within the discretion of the District Court," an "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Matrix Capital Mgmt. Fund, L.P. v. BearingPoint, Inc.*, 576 F.3d 172, 194 (4th Cir. 2009) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). We have also reasoned, however, that "a district court's 'failure to articulate [its] reasons [for denying leave to amend] does not amount to an abuse of discretion' so long as its reasons 'are apparent.'" *Id.* (quoting *In re PEC Solutions, Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005)). In this case, it is apparent that the district court dismissed Appellants' claims with prejudice because Appellants did not move to amend the TAC, and because Appellants had already filed four complaints in this matter. The district court did not abuse its discretion. Accordingly, we affirm the dismissal of the TAC with prejudice.

## IV.

For the reasons set forth, we affirm the district court's dismissal of the Pension Plan claims in the SAC on the basis that Appellants lack Article III standing. *Sprint*, upon which Appellants principally rely, is plainly distinguishable and does not give rise to representational standing in this case. Furthermore, Appellants failed to plead that they personally have sustained a concrete and particularized injury-in-fact. Nor, in our view, does trust law, or the deprivation of a statutory right under ERISA, give rise to an Article III injury-in-fact.

With respect to the 401(k) Plan claims, the district court correctly determined that Appellants' claims arise from the *selection* of the Bank-affiliated claims, rather than from the repeated failure of CBC Appellees to remove the funds at committee meetings. Thus, the limitations period in 29 U.S.C. § 1113(1)(A) applies, and the last action constituting the

alleged breach occurred in 1999, more than six years before Appellants filed this action.

Finally, the district court's dismissal of the TAC with prejudice did not constitute an abuse of discretion where Appellants failed to file a motion to amend and had already amended their original complaint three times.

*AFFIRMED*